123 Mich. App. 39 (1983)
333 N.W.2d 168
AUTO-OWNERS INSURANCE COMPANY
v.
SOUTHERN MICHIGAN MUTUAL INSURANCE COMPANY
Docket No. 60335.
Michigan Court of Appeals.
Decided February 8, 1983.
Allen, Letzring & Denenfeld (by Stephen M. Denenfeld), for plaintiff.
Stuart & Stuart (by Mark F. Stuart), for defendant.
Before: R.B. BURNS, P.J., and BEASLEY and M.B. BREIGHNER,[*] JJ.
BEASLEY, J.
On August 27, 1979, plaintiff, Auto-Owners Insurance Company, filed an action for contribution against defendant, Southern Michigan Mutual Insurance Company. Plaintiff sought a judgment in the amount of $17,679.92 for defendant's pro-rata share of a settlement paid by plaintiff to an insured for damages sustained to a house insured by both plaintiff and defendant. After defendant's motion for summary judgment grounded upon GCR 1963, 117.2(1) was denied, the parties stipulated to have the trial court decide the matter on the pleadings, briefs, affidavits, and depositions. On September 28, 1981, the trial court awarded judgment in favor of plaintiff. Defendant appeals as of right.
The record reveals that on June 25, 1977, defendant issued a homeowner's insurance policy of one year's duration to James Elrod in the amount of $22,000. Shortly thereafter, on August 4, 1977, *41 Elrod obtained a one-year policy of insurance through plaintiff on the same premises with coverage in excess of $50,000. As a result of the insured property being severely damaged by a fire on February 12, 1978, plaintiff paid a total of $50,514.06 to Elrod for his property losses.
On the basis that two insurance policies covered the damaged premises, plaintiff claimed in the trial court that the loss should be apportioned between the two insurance companies. In our state, where two or more insurance policies cover the same property, an insurance company's obligation to the insured is limited to the proportion of the loss that the amount insured by the company bears to the entire amount of insurance.[1]
Where, as here, two insurance policies cover the damaged property, an insurance company may either institute a declaratory judgment action to determine the amount of its liability or seek contribution subsequent to paying the insured under the insurance policy.[2]
In response to plaintiff's complaint, defendant claimed that it was not liable for contribution to plaintiff on the basis that the insurance policy which it issued to the owner of the damaged property was automatically cancelled by substitution when the owner obtained a subsequent policy of insurance from plaintiff.
The insured, James Elrod, testified in his deposition that he purchased the subject property in 1975 for $22,000. When he secured the second insurance policy on August 4, 1977, he did not intend to "double insure" the premises. He further testified that he did not cancel his policy with *42 defendant prior to the fire, defendant did not tender a premium refund, and he believed that his agent at plaintiff's company would cancel the policy issued by defendant.
In its written opinion, the trial court found that: (1) the insurance policy provided by defendant to Elrod did not prohibit the purchase of another policy, (2) the acquisition of a second insurance policy did not automatically cancel the policy issued by defendant, and (3) Elrod and defendant did not mutually agree to cancel the insurance policy.
In this matter of first impression, we are called upon to decide if the taking out of a new policy of property insurance by a property owner, who has the intention that it will supersede the existing insurance policy, constitutes a cancellation of the existing insurance where the original policy does not provide for automatic cancellation upon the insured's purchase of another policy on the property.
A similar issue was addressed by the North Carolina Supreme Court in Baysdon v Nationwide Mutual Fire Ins Co.[3] There, the court held that, unless an insured communicates his intention to cancel the policy of the company which originally insured him, his purchase of a new policy covering the same risk does not act as a unilateral cancellation of the earlier policy, even if the insured intended to cancel the policy.
Likewise, in MFA Mutual Ins Co v Southwest Baptist College, Inc,[4] it was held that an earlier policy of insurance was not automatically cancelled by the purchase of another policy. That court relied primarily on the fact that the original policy did not contain a clause which provided for *43 termination upon the acquisition of another policy.[5]
The following pertinent clauses are found in the homeowner's policy provided by defendant to the insured, James Elrod:
"Apportionment-Section 1:
"Loss by fire or other perils not provided for in 6b below:
"This Company shall not be liable for a greater proportion of any loss from any peril or perils included in this policy than:
"(1) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, or which would have covered the property except for the existence of this insurance * * *
"(2) for a greater proportion of any loss than the amount hereby insured bears to all insurance, whether collectible or not, covering in any manner such loss or which would have covered such loss except for the existence of this insurance.

* * *
"Pro rata liability. This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

* * *
"Other Insurance: Other insurance covering the described dwelling building (except insurance against perils not covered by this policy) is not permitted."
Like the trial court, we find that the policy *44 furnished by defendant did not provide for automatic cancellation in the event that the property owner acquired a subsequent policy. The policy's clause which states that "[o]ther insurance covering the described dwelling building * * * is not permitted" does not inform the property owner of the effect of a subsequent policy. Furthermore, two of the quoted clauses indicate that defendant limited its liability in case the insured owned more than one policy covering the same risk.
Our reading of the Baysdon case, supra, convinces us that the mere procurement of substitute insurance by a property owner with the intent to replace the existing insurance does not, ipso facto, constitute a cancellation of the existing insurance policy.[6] Additional support for this holding is contained in the following passage:
"A number of cases give some support to the proposition that the taking out of a new policy of property insurance, with the intention on the part of the property owner that it take the place of the existing insurance, in and of itself constitutes a cancellation of the existing insurance. However, other, more recent, decisions completely reject the view that the mere taking out of new insurance on property already insured in and of itself acts as a cancellation of the prior policy. Such rule applies also to a disability income protection policy. It appears that the overwhelming weight of modern authority favors the rule that a loss should be divided on a pro-rata basis where there is overlapping coverage and where the parties have not agreed to the contrary.
"Even where the insured does intend to cancel an existing policy and is in the process of obtaining substitute *45 coverage, notice is required to fix the date when the old policy will terminate." (Footnotes omitted.)[7]
Since the policy furnished by defendant to Elrod had not been cancelled by mutual consent or an affirmative policy clause, we find that the insured on the date his property was damaged had overlapping insurance policies. Accordingly, we affirm the judgment awarded by the trial court.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.
[1] See Standard Policy Form at MCL 500.2832; MSA 24.12832, line 86 et seq.
[2] State Farm Fire & Casualty Co v Farmers Ins Exchange, 80 Mich App 567; 264 NW2d 62 (1978).
[3] 259 NC 181; 130 SE2d 311 (1963).
[4] 381 SW2d 797 (Mo, 1964).
[5] In accord with the holdings in Baysdon and MFA Mutual Ins Co, supra, are, among others, Glens Falls Ins Co v Founders' Ins Co, 209 Cal App 2d 157; 25 Cal Rptr 753; 3 ALR3d 1058 (1962); Ector v American Liberty Ins Co, 138 Ga App 519; 226 SE2d 788 (1976); Franklin v Carpenter, 309 Minn 419; 244 NW2d 492 (1976); Northern Ins Co v Mabry, 4 Ariz App 217; 419 P2d 347 (1966). Contra, Strauss v Dubuque Fire & Marine Ins Co, 132 Cal App 283; 22 P2d 582 (1933); Bache v Great Lakes Ins Co, 151 Wash 494; 276 P 549 (1929).
[6] Our holding here does not, of course, preclude an insurance company from raising other defenses to the policy such as fraud, deceit, cancellation by mutual consent, and/or an affirmative termination clause in the policy.
[7] 43 Am Jur 2d, Insurance, § 414, p 482.