In the Matter of GULF TAMPA DRYDOCK COMPANY, Debtor.

GULF TAMPA DRYDOCK COMPANY, Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant.

In the Matter of GULF TAMPA OF FLORIDA, INC., Debtor.

GULF TAMPA OF FLORIDA, INC., Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant.

Bankruptcy Nos. 84–2330, 84–2395.
Adv. Nos. 84–525, 84–533.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 19, 1985.

---

Don M. Stichter, Tampa, Fla., for plaintiffs.

Edward M. Waller, Jr., Tampa, Fla., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THESE ARE Chapter 11 cases and the matters under consideration are two Complaints filed by related Debtors against the Insurance Company of North America (INA). The first Complaint is filed by Gulf Tampa Drydock Company (GTD), the Debtor in Case No. 84–2330 and the second complaint is filed by Gulf Tampa of Florida, Inc. d/b/a Southport Stevedores (Southport), the Debtor in Case No. 84–2395. Both Complaints are based upon the same operative facts and so, both cases are addressed in this decision as if they were only one case.

By their Complaints, the Debtors seek an order from this Court enjoining INA from cancelling certain insurance policies which cover various aspects of the Debtor's business. The Debtors claim that without insurance they can not operate and thus, reorganization would be impossible. In addition, the Debtors claim that replacement of the INA policies is not possible because either alternative insurance is not available or the cost of replacement insurance would be prohibitive.

The facts relevant to a resolution of the controversy under consideration can be summarized as follows:

In early October, 1984, an agent of INA issued a binder to both Debtors which temporarily provided insurance coverage pending the issuance of the actual insurance policy by INA. In addition, INA quoted rates to both Debtors based on a standard industry rate and also awarded the Debtors certain credits or price reductions based on their better than average safety record. On October 10, 1984, an Order for Relief was entered in the GTD case and on October 17, 1984, an Order for Relief was en-

tered in the Southport case. Within days after the Order was entered in the Southport case, INA issued its policies to both Debtors, however, the rates did not reflect the credits which had previously been quoted. Within a day or two of issuing the policies, INA also sent to the Debtors a Notice of Cancellation with respect to both policies. The effective date of the cancellation was December 31, 1984.

The Debtors contend that INA cancelled the policies because the Debtors had filed their Chapter 11 cases; that the cancellations were arbitrary and capricious and that, as a matter of law, the policies cannot be cancelled. In addition, it is alleged that the policies were issued without the credits so that INA could charge a higher premium pending the cancellation which INA contemplated when the policies were issued.

INA disputes the Debtors' contentions that the cancellations were arbitrary and capricious and that the credits were taken back for any reason other than the analysis of the account proved they were not warranted. In addition, INA contends that regardless of the reason, the policies were cancellable at will, with or without cause, per the policy language which reads as follows:

"Either you or we can cancel this policy at any time.... you can cancel this policy by sending us written notice of the future date you want the coverage to end. We will then refund any unearned portion of the premium you paid, on a *pro rata* basis.... We can cancel the policy by sending to you, at the address shown of the Declarations, Notice of the effective date of cancellation. We must do this at lest 45 days prior to the cancellation date unless we are cancelling the policy because you failed to pay your premiums ... We will then refund any unearned portion of the premium you paid, on a *pro rata* basis."

In support of their claim that the policies are cancellable at will, INA cites to this court the case of *Coira v. Florida Medical Association, Inc.*, 429 So.2d 23 (Fla. 3rd DCA 1983), which holds that the contract language set out above is binding on the parties.

While the Court accepts as true the proposition that under state law the policies are cancellable at will, this does not necessarily mean that the policies remain cancellable at will in the context presented by this case.

It is without dispute that on October 18, 1984, INA sent Mr. Richard Richards a Loss Control Inspector, to inspect the Debtors' work sites. Under normal circumstances, Mr. Richards would have made an appointment, however, on this visit Mr. Richards arrived without prior notice to the Debtors. Mr. Richards did not inspect the premises, but rather spoke with Mr. Lupton, the Safety Director for the Debtors. The parties' dispute the content of the conversation between Mr. Lupton and Mr. Richards, however, it does appear that the primary topic of interest to Mr. Richards was the Debtors' bankruptcy and not the safety conditions at the Debtors' work places. Mr. Richards reported back to his superiors at INA who shortly thereafter made the decision to cancel the policies.

Since sending their notice of cancellation, INA has sent other personnel to inspect the Debtor's places of business and these inspections have allegedly uncovered grave safety problems at the work sites which INA claims warrant cancellation. Many of the problems found have been corrected by the Debtors already and it appears that the other problems found were all circumstances which have existed for many years and about which INA has never complained.

A prime example of the problems found is a lack of a security guard to monitor the entrance to the premises. It appears, however that there has never been a guard and that never in the many years that INA has written policies, has this point been mentioned.

This Court is convinced that the primary motive for sending Mr. Richards, unannounced, to the Debtors' place of business was INA's recently acquired knowledge that the Debtors has filed bankruptcy. It

is equally clear that the inspections made since the sending of the notice of cancellation could not have been considered when deciding to cancel the policies. In addition, considering that the present controversy was contemplated when these inspections were made, the alleged seriousness of these safety hazards must be taken with a grain of salt. Therefore, the Court must conclude that the prime motive for cancellation by INA was the bankruptcy filing by the Debtors.

■ It is clear that the policies under consideration are property of the estate pursuant to § 541(a)(7) and thus are subject to the automatic stay. It is equally clear that the policies are property of the estate and are covered by § 363(*l*) which reads as follows:

"(*l*) The trustee may use, sell or lease property under section (b) or (c) of this section, or a plan under Chapter 11 or 13 of this title may provide for the use, sale or lease of property, notwithstanding any provision in a contract, a lease or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or the appointment or taking possession, by a trustee in a case under this title or a custodian, and that effects a forfeiture, modification or termination of the debtor's interest in such property."

Although the language contained in the policies under consideration does not mention the filing of a case in bankruptcy as a condition upon which the insuror may cancel the policy, it does state that the policies may be cancelled upon the giving of 45 days notice. Were this Court to allow INA to cancel the policies based on the Debtors' filing of their Petitions simply by fulfilling the 45 days notice requirement, it would effectively give INA the right to cancel the policies in contravention of § 363(*l*). To allow cancellation in this case would permit INA to do indirectly what they could not do directly.

The case of *Holand America Insurance Co. v. Sportservice, Inc. (In re Cahokia Downs, Inc.)*, 5 B.R. 529 (Bankr.S.D.Ill. 1980) is strikingly similar to the case under consideration. In the *Cahokia, supra* case, Holland American Ins. Co. sought to lift the automatic stay in order to cancel the policy of insurance it had written for Cahokia Downs, Inc. The Court held:

"... There is no question but that a policy of insurance, especially one in which the premium has been paid, is a valid and binding contract between the insurance company and the insured and would constitute an asset of the bankruptcy estate ... The cancellation of the insurance would certainly come within the provisions of the automatic stay under § 362(a)(3). It is also property which could, within the meaning of § 363, be used by the Trustee, and certainly paragraph (1) of § 363 would be applicable to the cancellation provision in spite of the fact the provision does not refer to insolvency or the financial condition of the debtor. This is especially true when, as in the instant case, it is quite obvious that the prime reason for the attempted cancellation of the insurance was the bankruptcy."

Having determined that the filing of bankruptcy was the prime motivation of Holland America, the Court declined to lift the automatic stay to allow cancellation.

■ Relating the foregoing to the facts of the case at hand it is clear that the cancellation is prohibited not only by § 362, but also pursuant to § 363(e). In addition, pursuant to § 105 of the Code, this Court has the power to enter such orders as are necessary to carry out the provisions of Title 11 and thus to enjoin INA from cancelling the policies which are the subject of these actions. See, *In the Matter of Amber Lingerie*, 30 B.R. 736 (Bkrtcy.S.D.N.Y. 1983).

■ The Debtors have also requested that this Court rule that the credits originally quoted by INA should be maintained in place. According to the testimony of Mr. A.R. Johnson, such credits are completely discretionary on the part of INA.

Further it appears that quotes given prior to the actual issuance of a policy are not binding inasmuch as the Debtors were not compelled to pay for the policy when issued if it was not satisfactory. In addition, although the binder had been issued and quotes given, INA was not bound to issue a policy at all, but may have decided not to issue the policy after analysis of the risk involved. The whole purpose of a binder is to give the insurance company sufficient opportunity to analyze the risks involved. In other words, such quotes appear only to be preliminary, "ball-park" type statements and until the policy is actually issued and accepted it appears that neither side is bound to the policy terms. Be that as it may, it is clear that the policy as written is what must stand.

This Court has neither the inclination nor the expertise to substitute its judgment for that of INA. This is not to suggest that if, in the future, circumstances change so that INA feels its exposure to risk is increased, that it should not be allowed to request leave of this Court to raise the premiums.

■ One last point, the Debtors claim that this Court has the power to compel INA to renew the policies in question when such policies expire by their own terms. The case of *Heaven Sent Ltd. v. Commercial Union Insurance Co. (In re Heaven Sent Ltd.)*, 37 B.R. 597 (Bankr.E.D.Penn. 1984) is clear on this point.

> "We note at the outset that the debtor asks us to do more than enjoin the cancellation of insurance policies—it requests that we direct commercial to renew the policies in question. The debtor directs our attention to the case of *Matter of Amber Lingerie*, 30 BR 736 (Bkrtcy.S.D.N.Y.1983) wherein the Court pursuant to section 105 of the Code,[2] enjoined an insurance company from cancelling an unexpired policy. The dispositive factor in that case, as well as in the other cases cited by the debtor, was that the policy in question had not expired. In the case subjudice, however, both policies will terminate by their own terms in the very near future. We are unaware

of any provision in the Code which authorizes us to direct Commercial to renew the subject policies and thereby create new contractual rights between it and the debtor where none heretofore existed."

The Court in *Heaven Sent* went on to deny the injunction.

For the same reason as set forth in the *Heaven Sent, supra* case, this Court is not inclined to issue an order requiring the issuance of a new policy by INA when the present one expires.

A separate final judgment will be entered in accordance with the foregoing.