STEPHEN H. ANDERSON, Circuit Judge.
After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R. App.P. 34(a); 10th Gir.R. 34.1.8(c) and 27.1.-2. The cause is therefore ordered submitted without oral argument.
This case involves the bankrupt partner (“Manning”) of a five-man general partnership. The trustee in bankruptcy (“Trustee” and appellee herein) brought an action against the partnership and the nonbankrupt partners (“Nuthatch” and appellants herein) seeking authority to sell the real estate of the partnership and to disburse the net proceeds among the five partners.[1] In the alternative, he sought windup of the partnership and a partnership accounting. Nuthatch defended by contending that the Trustee had the right to sell only the bankrupt’s interest in the partnership and that Nuthatch had the right to buy out that interest under terms specified in the partnership agreement.
The bankruptcy court held that, under federal bankruptcy law, the Trustee was authorized to sell the bankrupt’s interest in the partnership but was not authorized to sell the partnership real estate. Connolly v. Nuthatch Hill Associates (In re Manning), 37 B.R. 755, 759-60 (Bankr.D.Colo. 1984). The court also ruled that paragraph twelve of the partnership agreement, entitled Voluntary Termination, applied to the windup of the partnership after a dissolution by bankruptcy. Under its terms, therefore, he concluded that the nonbankrupt partners were entitled to buy Manning’s interest by paying him 75% of the value of his capital account in the partnership. The Trustee then moved for amendment and clarification of the value of the capital account. Thereafter, the bankruptcy court declined to amend its original ruling and, after a hearing on the meaning of capital account, upheld the Nuthatch tender offer to buy out Manning at 75% of the book value of his interest in the partnership assets.
The Trustee sought and obtained reversal in district court of the bankruptcy court’s acceptance of Nuthatch’s windup offer.[2] Nuthatch brought this appeal to *207 have the judgment of the bankruptcy court reinstated. Because we determine that critical provisions of the partnership agreement are ambiguous, we remand to the bankruptcy court for the purpose of taking extrinsic evidence of the intent of the parties.
BACKGROUND
The following facts in this case are undisputed on appeal. In 1969 Donald Manning and four other men established a general partnership which, in turn, purchased approximately 88 acres of mountain land in Clear Creek County, Colorado at a price of $75,000. Each partner invested $4400 in the purchase, the partnership took title to the property, and the sellers retained a a first deed of trust for the balance of the purchase price. Each partner possessed an undivided one-fifth interest in the partnership as a tenant in partnership. By virtue of that partnership interest, each partner had an indirect interest in the real estate.[3] The partnership existed for no other purpose than to own the mountain land, the value of which appreciated greatly over the next thirteen years. By the end of 1982 the real estate was appraised at a fair market value of $722,700 and a minimum most probable sales price of $578,200.[4]
In 1982, Manning and his wife filed a voluntary bankruptcy petition under Chapter 7 of Title 11 of the United States Code. Under Colorado law, a bankruptcy filing by any partner effects an automatic dissolution of the partnership. Colo.Rev.Stat. § 7-60-131(e) (1986).
I.
The validity of the legal arguments advanced by both sides depends on the interpretation and applicability of provisions of Title 11 of the United States Code (“Bankruptcy Code”), the Colorado Uniform Partnership Act, and the Nuthatch partnership agreement. The Trustee first argues on appeal that section 363(f) of the Bankruptcy Code allows sale of the partnership property free and clear of the interests of others in the property. As the bankruptcy court ruled, however, section 363(f) does not extend this far. Connolly, 37 B.R. at 759-60. Section 363(f) provides for sale, under specified conditions, of “property under subsection (b) or (c) of this section [363] free and clear of any interest in such property of an entity other than the estate.” Sections b and c, in turn, refer only to sale of “property of the estate” and not to other property. In this case, the Trustee’s argument notwithstanding, the reference to property in section 363(f) applies to the bankrupt’s one-fifth undivided tenancy in partnership, which is part of the property of the bankrupt’s estate. It does not authorize sale of the real property owned by the partnership, since it is not property of the estate.[5]
II.
The Trustee next argues that Colorado partnership law authorizes the sale of the *208 partnership real estate. Unless the partnership agreement provides otherwise, Colorado partnership law provides for a sale and distribution of all partnership assets upon a dissolution that does not contravene the partnership agreement. The specific provision in the Colorado law reads as follows:
(1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner as against his partners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities and the surplus applied to pay in cash the net amount owing to the respective partners____
Colo.Rev.Stat. § 7-60-138 (1986). Accurately stating that Manning’s dissolution by bankruptcy did not contravene the partnership agreement,[6] the Trustee urges on appeal that the court order windup under Colorado law and a full partnership accounting.[7]
The Trustee argues that the partnership agreement does not preclude application of the Colorado liquidation provision. He contends that the pertinent paragraph of the agreement — paragraph twelve entitled Voluntary Termination — deals only with voluntary dissolution, windup, and termination and does not apply to a dissolution by operation of law such as is the case here. He further argues that since there is no explicit provision in the partnership agreement dealing with dissolution by bankruptcy, the Colorado provision is applicable. In the alternative, he argues that if paragraph twelve applies in the bankruptcy context, the Nuthatch interpretation of its buy-out terms is invalid because it would violate the Bankruptcy Code by requiring the bankrupt, in effect, to forfeit his interest in the partnership.
In contrast, Nuthatch argues that paragraph twelve of the partnership agreement is fully applicable and therefore precludes application of the Colorado liquidation provision cited above. Paragraph twelve reads as follows:
12. Voluntary Termination. The partnership may be dissolved at any time by the request of any partner, in which event the partners shall proceed with reasonable promptness to liquidate the partnership affairs. The assets of the partnership shall be used and distributed in the following order: (a) to pay or provide for the payment of all partnership liabilities and liquidating expenses and obligations other than to partners; (b) to pay debts owed to partners; (c) to discharge the balance of the capital accounts of the partners; and (d) to discharge the balance of the income accounts of the partners. Not withstanding the foregoing, if such dissolution is not consented to by partners owning a majority of the partnership interests, then the nonconsenting partners shall have the right to purchase the entire partnership interest of the partner or partners seeking to dissolve the partnership at the price and payment terms stated in paragraph 15. Thereafter, the partnership business shall be continued by the successor partnership comprising the remaining partners.
R. Vol. I at 8 (emphasis added). The price specified in paragraph fifteen, entitled “Default,” is the amount equal to 75% of the partner’s capital account. The term capital *209 account is not defined, but paragraph five, entitled “Capital,” describes the capital account as follows:
An individual capital account shall be maintained for each partner, to which shall be credited all of his contributions and his share of all partnership income which is retained as capital, and to which there shall be charged all withdrawals of capital, if any, and his share of operating losses, if any.
Id. at 5.
The interpretation of paragraph twelve of the partnership agreement is critical to the resolution of this case. As noted above, paragraph twelve is entitled Voluntary Termination. It addresses itself to dissolution and to two alternatives for winding up the partnership affairs. One alternative anticipates the liquidation of the partnership assets and termination of the partnership, while the other allows a buyout of the interest of the partner “seeking to dissolve the partnership” and a continuation of the partnership business. The choice belongs to the partners owning a majority of the partnership interests; if they do not wish to liquidate, they can pursue the buy-out option.
A problem arises in determining whether or not a dissolution effectuated by bankruptcy is intended to be included within the provisions of paragraph twelve. On the one hand, the paragraph may be read as directed to voluntary termination, as its heading states, rather than to voluntary dissolution.[8] If so read, the thrust of the paragraph is to give to partners holding a majority interest the right to decide whether or not to terminate the partnership business: it is the termination, rather than the dissolution, that must be voluntary on the part of the partners holding a majority interest. Plausibly, if those partners desire to continue the partnership business, their ability to do so should preclude termination by a bankrupt partner who dissolves the partnership.
On the other hand, the language of paragraph twelve also can be read to mean that it is concerned only with voluntary dissolution “by the request of any partner.” Arguably, bankruptcy is not the kind of dissolution occurring upon request, since it takes place automatically upon the filing of the bankruptcy petition with the bankruptcy court. This argument is bolstered by references in paragraph twelve to the imposition of penalizing buy-out terms only upon a partner “seeking to dissolve the partnership,” if “such” dissolution (i.e., “by the request of any partner”) is not consented to. Such an argument views dissolution by bankruptcy as involuntary, comparable to dissolution by death or the incompetency of a partner.[9] Under -the latter circumstances, separate provisions in the partnership agreement provide for buyout of the partner’s “entire partnership interest” after appraisals and without imposition of any penalty.
The bankruptcy judge gave no reason for finding that the intent of paragraph twelve was to cover dissolution by bankruptcy, and he took no extrinsic evidence on the subject. He simply gave an expansive reading to the termination provisions, thereby honoring the value to the remaining partners of their ability to decide whether or not to terminate the partnership business upon dissolution by bankruptcy. Our own reading of the paragraph forces us to conclude that it is facially ambiguous and that the ambiguity is not *210 resolved by the agreement as a whole. Where an ambiguity in the terms of an agreement cannot be resolved by the agreement itself, extrinsic evidence as to intent is allowed. See Teton Exploration Drilling, Inc. v. Bokum Resources Corp., 818 F.2d 1521, 1526 (10th Cir.1987); Yeates v. Yeates (In re Yeates), 807 F.2d 874, 878 (10th Cir.1986). Until it is received and the paragraph is interpreted in a more explicatory and definitive way, it is not possible to decide whether or not the agreement takes precedence over the Colorado liquidation provision.[10]
III.
Even if paragraph twelve of the partnership agreement applies and Nuthatch, therefore, can buy out Manning's interest, questions remain as to what the buy-out terms mean and if they are valid as applied. While the bankruptcy judge broadly construed the voluntary termination language in paragraph twelve to encompass dissolution by bankruptcy, he narrowly construed the phrase “capital account” to mean the book value of Manning’s interest. He thereby allowed imposition of a severe penalty upon the bankrupt partner. In doing so, he took no extrinsic evidence.[11] Instead, he contrasted the term “capital account” in paragraph fifteen (incorporated by reference in paragraph twelve) with the different buy-out terms in paragraphs sixteen and seventeen dealing with buy-out upon the death or incompetency of a partner. The latter paragraphs provide for purchase of the partnership interest based on appraisals of its value. Although the buy-out terms are admittedly different in the two pairs of paragraphs, it is still not clear what effect the partners intended by that difference. If they intended the term “capital account” to be construed as the book value rather than the appreciated value of the partnership real estate, then arguably the partners meant to allow a possibly severe penalty to be imposed not only upon a defaulting partner but upon any partner voluntarily dissolving the partnership.
The question arises as to whether any partner would have signed such an agreement, knowing that if in the future he wanted or needed to leave the partnership he would, in effect, forfeit not only 25% of his capital contributions but any appreciated value of the partnership assets at the time of the dissolution as well. It is not clear why the partners would have agreed to such a provision among themselves, and no evidence was taken to try to ascertain whether they intended to bind themselves in this fashion. If they did so intend, it is still not clear whether at the time the agreement was signed, the partners viewed or would have viewed dissolution by bankruptcy as more analogous to dissolution by death or incompetency than to voluntary dissolution at the express will of a partner. In other words, even if the language of the agreement itself may suggest a basis for construing the term capital account as something less than the fair market value, such a construction does not resolve the ambiguity as to whether the penalty buyout terms of paragraph twelve were meant to apply to dissolution by bankruptcy.
Given the inherent implausibilities of a narrow construction of the term “capital account,” we remand to the bankruptcy court for extrinsic evidence of the intent of the partners with respect to the meaning of capital account incorporated into paragraph twelve of the partnership agreement. If the court determines that the partners, in fact, did intend to allow a severe penalty upon dissolution by bankruptcy, the court *211 should re-examine its earlier ruling that paragraph twelve is not covered by the anti-forfeiture provisions of the Bankruptcy Code.
The Bankruptcy Code is fundamentally concerned with equity and has as one of its objectives to enable the debtor to make a fresh start. See General Motors Acceptance Corp v. Rose, (In re Matter of Rose), 21 B.R. 272, 276 (Bankr.D.N.J.1982). Sections 541(c) and 363(l) protect, respectively, the debtor’s interest in and the trustee’s right to sell property of the estate “notwithstanding any provision” that is “conditioned” on bankruptcy proceedings and that effects a modification or forfeiture of the debtor’s interest in the property.[12] We note that the 25% discount imposed on the amount payable would seem to effect at least a “modification” of the debtor’s property of the estate, which is illegal under both these sections. Furthermore, valuing the bankrupt’s interest, not at appreciated fair market value, as is typically done upon the death or incompetency of a partner, but instead at book value produces not only a modification but has the added effect of requiring Manning to virtually forfeit his interest in his tenancy in partnership, which would seem to be equally repugnant under the two sections cited. While the bankruptcy court reasoned that the penalty buy-out terms of the partnership agreement did not trigger the anti-forfeiture provisions of the Bankruptcy Code because they made no reference to bankruptcy and, therefore, were not literally conditioned on bankruptcy, that conclusion should be reexamined in the light of such cases as Holland America Ins. Co. v. Sportservice, Inc. (In re Cahokia Downs, Inc.), 5 B.R. 529, 531 (Bankr.S.D.Ill.1980) (cancellation provision of fire insurance contract is void under 363(() “in spite of the fact that the provision does not refer to insolvency or the financial condition of the debtor,” especially where the “prime reason for the attempted cancellation of the insurance was the bankruptcy”), and Gulf Tampa Drydock Co. v. Insur. Co. of No. America (In re Matter of Gulf Tampa Drydock Co.), 49 B.R. 154, 156-57 (Bankr.M.D.Fla.1985) (section 363(() bars cancellation of insurance policies). Alternatively, the bankruptcy court might consider whether or not a 25% penalty, and/or a book value interpretation of the term “capital account,” constitute, in effect, unreasonable liquidated damages and, as such, produce a result disfavored by general equitable principles.
CONCLUSION
We reinstate that portion of the bankruptcy court’s ruling which held that the Trustee lacked authority under section 363(f) to sell the partnership property free and clear of the interests of the partnership entity and of the nonbankrupt partners. Connolly, 37 B.R. at 760. We remand, *212 however, for the bankruptcy court to take extrinsic evidence as to the intent of the parties with regard to the applicability of paragraph twelve to dissolution by bankruptcy. We also remand for extrinsic evidence as to the intended meaning of the term “capital account” in paragraph twelve of the partnership agreement.
The order of the district court is vacated and the cause REMANDED to the bankruptcy court for further proceedings and an entry of findings and conclusions of law de novo, all consistent with this opinion.

. Both parties agree that the pro-rated amount to be realized for the bankrupt’s estate from the sale of either the partnership itself or the partnership real estate would be far more than the amount from the sale of just the bankrupt’s interest in either.

. The district court misconstrued the basis for the bankruptcy court's acceptance of Nuthatch’s windup offer. The bankruptcy court, in allowing the nonbankrupt partners to value the bankrupt’s interest at 75% of book value, held that 11 U.S.C. § 363(/), which prohibits a forfeiture of the bankrupt’s interest, was inapplicable. The bankruptcy court reasoned that the buy-out terms were valid since they were not "conditioned" upon the filing of bankruptcy, a circumstance that would have created a section 363(/) violation. Instead, he concluded that they were part of an otherwise valid default provision which had nothing to do with bankruptcy and which had simply been incorporated by reference into the provision dealing with voluntary termination of the partnership. Mischaracterizing this reasoning, the district court held that it was clearly erroneous for the bankruptcy court to invoke the default buy-out terms since there was no evidence that the bankrupt partner had defaulted by failure to make a required capital contribution. The point, however, is not that the bankrupt failed to contribute capital when *207 asked but rather that the buy-out terms of the default provision were incorporated by reference into paragraph twelve concerning windup and termination. Although the bankruptcy judge cited the language of the default provision, it is clear in context that he was merely citing it to show that its terms were not conditioned upon the filing of bankruptcy. We, therefore, reject the district court’s reasoning and turn to the bankruptcy court rulings for our subsequent analysis.

. The real estate was owned by the partnership as an entity and not by the individual partners. Each partner owned his one-fifth interest in the partnership.

. Based primarily on the appraisal of the real estate, the Trustee estimated that the appreciated value of Manning’s one-fifth interest in the partnership would be between $109,640 and $138,540. Nuthatch, in contrast, calculated 75% of the book value of Manning’s interest to be $9,053.29. The Trustee’s estimate apparently is based on the sale of the entire real estate and disbursement of the proceeds; an estimate of what the sale of the one-fifth partnership interest alone would bring is not in the record.

. Within section 363, subsection (h) authorizes sale of property, under specified conditions, free and clear of the interests of co-owners where the debtor is a tenant in common, a joint tenant, or a tenant by the entirety. On appeal, the Trustee concedes that the property of Manning’s estate does not fall within section 363(h) since Manning’s one-fifth, undivided tenancy in partnership in the Nuthatch partnership is different from those kinds of direct interests in partnership real estate.

. Actually, the language of paragraph twelve of the agreement Is ambiguous as to whether a dissolution thereunder is or is not allowed if it is not consented to by the partners holding a majority interest. See the language of paragraph twelve, infra at page seven. On the one hand, the language may be read to preclude the actual dissolution itself. On the other hand, it may be read instead to dictate the windup terms where the partners holding a majority interest do not agree to but cannot prevent the dissolution. This ambiguity, however, is immaterial in the context of a dissolution by bankruptcy, since by operation of Colorado law such a dissolution is not in contravention of the partnership agreement. See Colo.Rev.Stat. 7-60-131(b) and (e) (1986).

. Generally speaking, the nonbankrupt partners have the right to wind up partnership affairs under Colorado law, but any partner or his legal representative can obtain windup by the court for "cause shown.” See Colo.Rev.Stat. § 7-60-137 (1986).

. Dissolution and termination are not synonymous terms, although they sometimes mistakenly have been used as such. As stated in the Colorado statutes, “The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the ■ winding up of the business.” Colo.Rev.Stat. § 7-60-129(1986). “On dissolution the partnership is not terminated but continues until the winding up of partnership affairs is completed.” Colo.Rev.Stat. § 7-60-130 (1986).

. Nuthatch counters that a dissolution by bankruptcy under Chapter 7 is voluntary, because the bankrupt files voluntarily under that chapter. We note that Bromberg categorizes the underlying cause of partnership dissolution by a partner’s bankruptcy as generally involuntary, in contrast to dissolution by expulsion, breach of agreement, misconduct, or by the express will of any or all partners, which he categorizes as voluntary. Bromberg, Partnership Dissolution: Causes, Consequences, and Cures, 43 Tex.L. Rev. 631, 635 (1965).

. If the partnership agreement allows the partnership to preclude application of the liquidation provision in this context, then there is no need to address the additional question as to whether section 363(f) of the Bankruptcy Code also precludes application of the same liquidation provision. We simply note that while it is clear that section 363(f) authorizes the sale only of the property of the bankrupt's estate, the explicit terms of section 363(f) do not themselves preclude Colorado partnership law from dealing with matters that go beyond the Bankruptcy Code itself. Nonetheless, we do not decide this matter here, preferring to allow exploration of alternative grounds of decision first.

. He did, however, receive an offer of proof that the 25% penalty had been an intentional disincentive to dissolution.

. Section 541(c)(1) states:
Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
(A) that restricts or conditions transfer of such interest by the debtor; or
(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor’s interest in property.
11 U.S.C.A. § 541(c)(1) (Supp.1987).
Section 363(1) states:
Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, (12), or (13) of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor’s interest in such property.
11 U.S.C.A. § 363(0 (Supp.1987).
These citations are to the current versions of sections 541 and 363 which, where relevant to this appeal, are unchanged from the law in effect at the time of filing. See 11 U.S.C. § 541(c)(1) and § 363(0 (1982).