**Joseph E. SCRIMA, d/b/a Edison Shoe Specialists and Karen A. Scrima, Appellant–Plaintiff,**

**v.**

**The JOHN DEVRIES AGENCY, INC., Insurance Company of North America, Transamerica Insurance Company and Frances M. Underwood and Florence L. Underwood, Appellees–Defendant.**

**Bankruptcy No. K88–303–CA4.**

United States District Court, W.D. Michigan, S.D.

May 31, 1989.

---

Edward Barton, Allegan, Mich., for Joseph E. Scrima.

Dilley, Dewey & Waddell by Jonathan Damon, Grand Rapids, Mich., for Transamerica Ins. Co.

Lawrence R. Jewell, Grand Rapids, Mich., for Ins. Co. of N.A.

OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

Before this Court are two matters. First, plaintiff-debtor, Joseph Scrima, appeals from a judgment of the bankruptcy court of August 30, 1988, relieving defen-

dant Transamerica Insurance Company from all liability under an insurance policy. Second, the Insurance Company of North American (INA) objects to the bankruptcy court's findings of fact and conclusions of law dated August 19, 1988.

The debtor-plaintiff, Scrima, d/b/a/ the Edison Shoe Specialist, operated a shoe store and shoe repair business in a building that he owned. Scrima insured his business and building through the John DeVries Agency, which was an agent for both Transamerica and INA. Before 1985 INA insured the business and building. However, Dennis Stowers, an agent of the DeVries Agency, got Scrima a better price with Transamerica. Transamerica issued a replacement cost policy from January 22, 1985, to January 22, 1986, with $100,000 limits on the building and $85,000 on its contents, and also provided one-year loss of income coverage. Scrima financed the prepaid annual premium of $1,454.00 for this coverage through a finance company.

In May of 1985 Transamerica inspected Scrima's business and building and decided to cancel the policy because of the condition of the building and the questionable financial condition of the business. In a letter dated July 8, 1985, Transamerica instructed the DeVries Agency to insure Scrima with another insurer and return either the original policy or a lost policy release. Otherwise, Transamerica stated that it would directly notify Scrima of cancellation.

On July 26, 1985, Mr. and Mrs. Scrima filed bankruptcy under Chapter 13, 11 U.S.C. §§ 1321, et seq. Scrima did not notify Transamerica of the bankruptcy. On August 7, 1985, Scrima's attorney, Mr. Barton, petitioned to convert the Chapter 13 proceeding to a Chapter 11 proceeding. On September 13, 1985, the bankruptcy court converted Scrima's bankruptcy from Chapter 13 to Chapter 11 and Scrima became a debtor-in-possession. On August 9, 1985, Transamerica formally notified Scrima that it was cancelling the policy effective September 11, 1985. Later, Transamerica refunded to Scrima the unearned premium. Also on September 11, 1985, the DeVries

Agency wrote a binder with INA. Since INA insurance with the same limits as insurance with Transamerica was more expensive. Scrima decided to reduce the policy limits. The INA policy had $70,000 limits instead of $100,000 on the building and $70,000 limits instead of 85,000 limits on the contents.

On September 22, 1985, a former employee burned Scrima's building. Scrima notified the DeVries agency and filed a proof of loss with INA. The DeVries Agency did not file a notice of loss with Transamerica until December 6, 1985, then indicating that Scrima had filed bankruptcy prior to Transamerica's cancellation of the policy. Scrima apparently did not file a claim against Transamerica because he did not know that filing for bankruptcy automatically would stay cancellation of his insurance. On March 6, 1986, Scrima filed a motion to hold Transamerica in contempt for violating the automatic stay by cancelling his insurance coverage. Nevertheless, agents of Transamerica knew of the loss on September 24, 1985. A letter exists in which a Transamerica employee expresses relief in that Transamerica was not liable for the claim because the policy had been cancelled.

Scrima sued Transamerica, INA, and the DeVries Agency. Scrima's land contract vendors, Frances M. Underwood and Florence L. Underwood, were added as necessary parties. On September 29, 1987, Scrima settled his claim against INA. Prior to trial Scrima also settled its claim against the DeVries Agency. The parties filed several motions for summary judgment. On January 13, 1988, INA filed a motion for partial summary judgment contending that Transamerica's purported cancellation of September 11, 1985, was void because it violated the automatic stay. INA further asserted that no facts supported Transamerica's affirmative defenses. On February 29, 1988, Bankruptcy Judge Laurence E. Howard heard INA's motion for summary judgment. In deciding the motion court focused on the issue of Scrima's consent to

and ratification of the cancellation.[1] The court denied INA's motion for summary judgment because for purposes of the motion it accepted as true Transamerica's assertions that Scrima consented to and ratified the cancellation. The court did not enter judgment in favor of Transamerica because Scrima's consent and ratification were not proven to be true.

The case was tried on August 16, 1988. Judge Howard found that Scrima had no cause of action against Transamerica and recommended that INA had no cause of action against Transamerica. The court decided that Transamerica violated the automatic stay by cancelling the insurance after Scrima filed for bankruptcy. The court further determined that Scrima consented to and ratified Transamerica's cancellation. In deciding this issue Judge Howard relied on two cases, *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir. 1982), and *In re Smith*, (*Smith v. First of America Bank*) 86 B.R. 92 (W.D.Mich. 1988).

In *Corset Shops* a tenant-debtor defaulted on a lease of its business premises. Under a court order the landlord-creditor evicted the debtor and removed the debtor's inventory to a warehouse. The debtor knowingly did not inform the creditor of the bankruptcy before the debtor's own employees assisted the creditor in removing the inventory. Later the debtor sued the creditor in bankruptcy court for conversion of the inventory. The bankruptcy court held that removal of the inventory did not violate the automatic stay because of the creditor's ignorance of the stay. The district court reversed. The court of appeals reversed the district court on equitable principles focusing on the debtor's "improper" and "stealthy" conduct in waiting for the creditor to "convert" the property in ignorance and then suing him.

In *In re Smith*, the debtor purchased a car and defaulted on the financing loan. The creditor bank repossessed the car intending to sell it. Before the creditor bank sold the car, the debtor filed a Chapter 13 bankruptcy. The creditor sold the car without notice of the bankruptcy and even tried to rescind the sale after learning of the bankruptcy. The bankruptcy court denied debtor's motion for return of the car. On appeal, the district court reversed finding that the creditor's good faith sale of the car in ignorance of the automatic stay nevertheless violated the automatic stay and was, therefore, void. *Smith* at 97. The district court ordered the bank to turnover the proceeds from the sale of the car to the debtor to secure other transportation in order to carry out her proposed plan. However, the district court did not impose sanctions under 362(h) because the bank's violation of the automatic stay was in good faith, i.e., in ignorance of the automatic stay.

In the present case the bankruptcy court determined that Scrima filed bankruptcy and did not inform Transamerica; that Scrima received a cancellation notice from Transamerica, but neither Scrima nor his Chapter 13 trustee objected to it; that Scrima did not consult his attorney about it; that Scrima bought coverage from INA assuming that the lower limits would be adequate; and that Scrima received a refund from Transamerica for the unused premium. Further, the court did not find that Scrima committed any wrongdoing.

From these findings the bankruptcy court concluded that Scrima had acquiesced in and ratified Transamerica's cancellation. The bankruptcy court reasoned that Scrima, as a debtor-in-possession operating the business, simply made a business decision, acquiesced in Transamerica's cancellation, and further ratified it by obtaining other coverage. Further, the bankruptcy court questioned INA's standing to use Transamerica's violation of the stay for its benefit.

---

1. The court reasoned: "I am aware that many other defenses have been raised by Transamerica and they're also subject to INA's motion. I shall not consider those now. The resolution of them would not resolve this case. If it is proven that the debtor consented or acquiesced, then Transamerica would not be liable. The Court should not decide issues that it need not decide. Special questions should be capable of a relatively easy determination." Transcript of Opinion of February 29, 1988, at 6.

The bankruptcy court also relied on 43 Am.Jur.2d § 420 for two general rules. First, where an agency representing two insurers cancels the policy of one insurer and switches to another, the second insurer cannot object to the cancellation of the first insurance because the second insurer had no interest in the first insurer's contract. Second, under those circumstances only one of the insurers, but not both, is liable for a loss. Moreover, the bankruptcy court observed that INA only incurred a loss on a risk for which it had bargained under the policy. The bankruptcy court concluded that as an equitable matter Transamerica should not be liable on this loss under its cancelled policy.

■ While this Court agrees with the bankruptcy court in its factual determinations, this Court differs with its legal determinations. The scope of the automatic stay is extremely broad and prohibits a wide range of creditor activity including "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Any action violating the automatic stay is void, *even without notice. Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Mueller v. Nugent*, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405 (1901); *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir.1982). Moreover, property of the estate consists of several broad categories. Under 11 U.S.C. § 541(a)(1), property of the estate includes (with certain exceptions under § 541(b) and (c)(2)) "all legal or equitable interests of the debtor in property as of the commencement of the case." Under § 541(a) a debtor's insurance policies generally comprise property of the estate. *In re Minoco Group of the Companies Ltd.*, 799 F.2d 517 (9th Cir.1986); *Tringali v. Hathaway Machinery Co.*, 796 F.2d 553, 560 (1st Cir.1986); *In re Davis*, 730 F.2d 176, 184 (5th Cir.1984); *In the matter of Gulf Tampa Dry Dock Co.*, 49 B.R. 154, 13 B.C.D. 159 (M.D.Fla.1985). Thus, § 362(a)(3) stays postpetition cancellation of insurance policies that are property of the estate. Further, any purported cancellation that violates the automatic stay is void *ab initio. In re Smith*, 86 B.R. 92 (W.D.Mich.1988). *In the matter of J & L Transport Inc.*, 47 B.R. 51 (Wisc.1985); *In re Advent Corp.*, 24 B.R. 612 (Md.1982).

■ Nevertheless, relief from the automatic stay is available under § 362(d). Under 362(d) a party in interest may request the court upon notice and hearing to terminate, annul, modify, or condition a stay for cause. The statutory grounds for relief include (1) lack of adequate protection for the party's property interest, and (2) the absence of a debtor's interest in the property where the property is not necessary to an effective reorganization. Further, courts exercising bankruptcy jurisdiction may recognize other equitable and due process principles to grant relief. *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

■ In the present case Transamerica effectively cancelled the insurance on September 11, 1985, without knowledge that Scrima had filed for bankruptcy on July 26, 1985. Even after Transamerica learned of Scrima's filing, Transamerica did not request relief from the stay. Scrima was unaware that his bankruptcy prevented Transamerica's from cancelling his insurance. Scrima did not inform Transamerica of his bankruptcy upon notice of the cancellation. Nor did Scrima inform the trustee or his attorney of Transamerica's cancellation. Rather, after Transamerica's cancellation Scrima simply obtained other insurance with INA with lower limits.

The law of the automatic stay applies in a straight forward manner. Since Transamerica cancelled Scrima's policy after he had filed for bankruptcy, Transamerica's cancellation was void *ab initio*. Since Transamerica's cancellation was void, the insurance policy was still valid. § 362(a).

■ Analysis of the equitable considerations raises several complex issues. Scrima's failure to recognize his rights under the automatic stay affected the interests of the parties. The bankruptcy court observed that Scrima and INA each got exactly what they bargained for under their insurance policy. However, this Court

notes that if Transamerica is held liable under its policy with Scrima, then it will also get exactly what it bargained for. The possibility that Scrima, while an insured, would file for bankruptcy was implicitly part of the risk that Transamerica assumed in insuring Scrima. Transamerica's risk ·that an automatic stay would prevent it from cancelling insurance is a hazard that all insurers incur when they offer to sell insurance. Had Scrima fully known the legal effect of the automatic stay, presumably he would have informed Transamerica of his bankruptcy. Then Transamerica could have moved the bankruptcy court for relief from the stay and Scrima could have moved to hold Transamerica in contempt for violating the automatic stay. Without notice Transamerica was effectively prevented from seeking relief from the automatic stay. However, Transamerica has admitted, rightly or wrongly, that it *probably* would not have received relief from the automatic stay.[2] Transamerica's position has not been prejudiced in any significant way. Assuming, as does Transamerica, that the bankruptcy court would not have removed the stay, Transamerica would have been liable on the insurance policy at the time of the fire. It's liability would have been that for which it had contracted.

However, assuming that Transamerica is permitted to cancel the insurance, then Scrima will be prejudiced in that he will not receive the full benefit of the automatic stay. Scrima's ignorant failure to object to Transamerica's violation of the stay jeopardized and impaired the existing coverage maintained at the time of filing. The limits of the Transamerica policy were higher than those of the INA and, therefore, offered greater protection. As it turns out, although the value of the building did not reach either policy limit, the value of the contents exceeded each policy limit. Clearly under the facts of this case Transamerica's unilateral cancellation altered the status quo, jeopardized the protection of the bankruptcy estate, and diminished its value.

Both Transamerica and Scrima acted in ignorance. Transamerica in ignorance of the automatic stay, Scrima in ignorance of the automatic stay's effect. However, Transamerica's cancellation was ignorant misfeasance, whereas Scrima's failure to notify was ignorant nonfeasance. Transamerica's cancellation was misfeasance because it violated the automatic stay. Scrima's failure to notify was nonfeasance because he simply did nothing to inform Transamerica of the stay. Outside of bankruptcy and apart from the automatic stay, Transamerica's cancellation presumably would have been effective. As such, Scrima's failure to adequately insure would have been merely an unfortunate business decision. However, inside bankruptcy and under the protection of the automatic stay, Transamerica's cancellation was void. Since Transamerica's cancellation was void, Transamerica's coverage was still in effect.

The bankruptcy court and Transamerica variously characterize Scrima's obtaining other insurance as simply a business decision to switch insurers and as consent to or ratification of Transamerica's cancellation by acquiescence. This legal characterization is inappropriate.[3] As the bankrupt-

---

**2.** Transamerica even concedes that if Scrima had notified Transamerica of his bankruptcy petition "it is probable that the Bankruptcy Court would have precluded Transamerica from cancelling coverage. Indeed, had Mr. Scrima done nothing whatsoever, it is probable that the court would have held the termination notice to be void, and the Transamerica policy to have been in effect at the time of the fire. Neither of these are what happened, however." (Transamerica's Brief on Appeal and in support of Judgment, at 17). Whether the bankruptcy court would have in fact so determined is unclear. However, Transamerica is right in observing that neither alternative occurred.

**3.** The bankruptcy court stated that, "The debtor, after all the facts in mind, made a decision to switch insurance companies." (Opinion, August 16, at 9). Transamerica characterizes this statement of the bankruptcy court as a finding of fact binding this Court, stating: "It is important to note that the trial court specifically found as a matter of fact that the decision to switch over to the INA policy was made only by Mr. Scrima and the amounts of coverage were decided solely by him." (Transamerica's Brief at 16). It is not clear to this Court that Scrima actually "made the decision to switch insurance companies." Commenting on the applicability of

cy court recounted the details of this case, it is clear that Transamerica cancelled its policy with Scrima. Nothing indicates that Scrima *switched* his coverage from Transamerica to INA. Only after Transamerica *cancelled* its coverage did Scrima obtain insurance from INA. The bankruptcy court specifically stated that Scrima "acquiesced" and "didn't object" to Transamerica's notice to cancel its insurance. Insofar as the word *switch* would indicate that Scrima actively and affirmatively changed coverage from Transamerica to INA, it is clearly erroneous. Insofar as Transamerica seizes upon the bankruptcy court's use of the word *switch* in this sense, it clearly mischaracterizes the facts. Although Scrima subsequently obtained reduced coverage from INA, Scrima clearly did not *switch* the coverage from Transamerica to INA.

As a debtor-in-possession Scrima had the authority to operate the business under Chapter 11 or 13 in a manner similar to a trustee in bankruptcy. This includes using, buying, and selling property of the estate. 11 U.S.C. §§ 363(c), 364, 1107, 1108, and 1304. The reasoning of the bankruptcy court and Transamerica is that although *Transamerica* is stayed from acting on property of the estate, Scrima as a debtor-in-possession under Chapter 11 or 13 is not stayed. They reason that Scrima could act on property of the estate and ratify or consent to Transamerica's violation of the stay.

█ However, an insured's ratification of or consent to an insurance cancellation done in ignorance of material facts or rights is ineffective. Scienter is crucial. "But an invalid or defective cancellation will not become effective by ratification, when the act of the insured relied upon was induced by ignorance of the facts or of his rights, or by the false representations of

the insurer's agent." 6A J.A. Appleman & J. Appleman, *Insurance Law and Practice*, § 4196 at 616 (1972).

The facts of this case indicate that Scrima was not aware of his rights under the automatic stay. Even though the bankruptcy court determined that Scrima was aware of all the *facts* of the case, he was, nevertheless, unaware of his *rights* under the automatic stay. Aside from the automatic stay, Scrima presumably was aware of all the material facts and rights. However, in the bankruptcy context Scrima's fundamental ignorance of the effect of the automatic stay on an insurer's cancellation of an insurance policy vitiated Scrima's consent or ratification by acquiescence. Therefore, since Scrima was unaware of his rights under the automatic stay, his acquiescence did not ratify the Transamerica's cancellation.

This Court also differs with several other of the bankruptcy court's legal findings. The bankruptcy court relied on 43 Am. Jur.2d § 420 for certain general rules where an agency representing two insurers cancels the policy of one insurer and switches to the other. The bankruptcy court opined that the second insurer could not object to the cancellation of the first insurance because the second insurer had no interest in the first insurer's contract. Further, under those circumstances the bankruptcy court assumed that only one of the insurers, but not both would be liable for a loss.

█ The bankruptcy court's statement of the law does not apply here. Although the DeVries Agency represented both Transamerica and INA, the DeVries Agency did not cancel the coverage with Transamerica. Rather, Transamerica cancelled the insurance constraining Scrima to obtain

---

*Smith Corset Shops* to the present case, the bankruptcy court stated:

> Clearly the activity of the Mr. Scrima doesn't fall to the level of the Smith Company. He didn't do anything wrong, but what did he do? He got a notice that the insurance company was going to cancel his insurance. He knew that there were problems before. He

acquiesced. He didn't object to it. He didn't talk to his lawyer. He sat down with this insurance agent and put the coverage with the other company. He reduced the limits of the coverage, but he did that voluntarily, and according to his agent, Mr. Stowers, he did it after affirmatively stating that the reduced coverage would be sufficient.

Opinion of August 16, at 7.

other insurance. Further, under Michigan law liability between insurance companies is prorated where dual coverage exists on a property at the time of a loss because one of the policies was not effectively cancelled.[4] *Auto Owners v. Southern Mich. Mutual Ins. Co.*, 123 Mich.App. 39, 333 N.W.2d 168 (1983); *State Farm Fire Casualty Co. v. Farmers Ins. Exchange*, 80 Mich.App. 567, 264 N.W.2d 62 (1978); M.C.L. § 500.2836(4). Moreover, under Michigan law INA has a right of subrogation to its extent of the loss and can object to Transamerica's cancellation on either tort or contract theories. M.C.L. §§ 500.2832 & 500.2836(4); *Northwestern Mutual Insurance Co. v. Jackson Vibrators, Inc.*, 402 F.2d 37 (6th Cir.1968); *State Farm Fire Casualty Co. v. Farmers Ins. Exchange*, *supra.*

■■■■ The bankruptcy court's opinion suggests that it annulled the automatic stay, but the judgment does not so state.[5] Under § 362(d) the bankruptcy court has explicit authority to annul an automatic stay. Annulment of an automatic stay operates retroactively and would relieve Transamerica of it effect. *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984). However, annulment of an automatic stay is a radical form of relief. An annulment "may be ordered by a bankruptcy court in appropriate limited circumstances.... Retroactive relief is only appropriate when a combination of factors justify the exercise of discretion to take such extraordinary action." *In the Matter of Schewe*, 94 B.R. 938, 18 B.C.D. 1412

(Bankr.W.D.Mich.1989). Generally, courts grant or affirm annulments of automatic stays only where evidence of the debtor's bad faith exists. *See In re Albany Partners, Ltd.*, *supra;* *In re Boston Business Machines*, 87 B.R. 867 (Bankr.E.D.Pa. 1988). In the present case no evidence of Scrima's bad faith exists. By contrast the bankruptcy court found that Scrima "didn't do anything wrong" and it further clearly distinguished the character of Scrima's conduct from the that of the debtor in *Corset Shops*. This Court determines that the bankruptcy court lacked the legal warrant to annul the automatic stay as to Transamerica's cancellation, if in fact it did annul the stay. Properly Transamerica's ignorance of the automatic stay merely should preclude imposition of sanctions for its violation.

## CONCLUSION

This Court determines that Scrima could not legally consent to or ratify by acquiescence Transamerica's unilateral cancellation of Scrima's insurance. This Court also determines that no sufficient warrant existed to annul the automatic stay as to Transamerica's unilateral cancellation. Further, this Court determines that Michigan law recognizes overlapping coverage with prorated liability between the insurers. This Court reverses the judgment of the bankruptcy court as to Scrima's appeal and rejects its conclusions of law as to INA's appeal on the limited issues decided in its opinion of August 16, 1988. Further, this Court remands this matter to the bankrupt-

---

4. In *Auto Owners v. Southern Mich. Mutual Ins. Co.*, 123 Mich.App. 39, 333 N.W.2d 168 (1983) the court determined that two insurance policies covered the same property at the time of a loss where one insurer did not cancel in compliance with statutory requirements. The court also determined that merely obtaining substitute insurance to replace existing insurance did not cancel the existing insurance. The court stated:

    "In our state, where two or more insurance policies cover the same property, an insurance company's obligation to the insured is limited to the proportion of the loss that the amount insured by the company bears to the entire amount of the insurance."

    *Id.* at 41.

5. The court stated:

    "I think the Court, under Section 362(d), under the circumstances such as this, has the right to annul the effect of the automatic stay, and I think it would a [great injustice] to allow the debtor to go ahead and change contracts or agree on the cancellation of some and then when something goes wrong, go ahead and hold everybody to that contract.

    Therefore, as to the cause of action of the debtors against Transamerica, I find that there's no cause of action. As far as the cross-claim by INA against Transamerica, my report recommendation, for the reasons given, is that there will be a holding of no cause of action." Opinion of August 16, at 9.

cy court for additional proceedings not inconsistent with this opinion.