Awilda ORTIZ de FUENTES, Plaintiff,

v.

CORPORACION INSULAR de SEGUROS, Defendant.

Civ. No. 85–2236 HL.

United States District Court, D. Puerto Rico.

Nov. 4, 1988.

David Efrón, Río Piedras, P.R., for plaintiff.

Harold D. Vicente, Santurce, P.R., for co-defendant Cristobal Jiménez.

## OPINION AND ORDER

LAFFITTE, District Judge.

On December 15, 1987, the day before trial was to begin, defendant Corporación Insular de Seguros ("CIS") moved pursuant to Fed.R.Civ.P. 42(b) for a separate trial on the issue of whether CIS was the insurance carrier for Corporación de Servicios Médico Hospitalarios de Fajardo ("the Hospital") on the day of plaintiff's injuries.[1] Considering the lateness of the motion, the Court bifurcated the case, ordered the trial to proceed without interposition of the defense, and reserved a ruling on the legal issue presented until after the trial.[2] On December 23, 1987 the jury awarded plaintiffs a total of $120,000 in damages. On June 2, 1988 plaintiffs filed a motion for an order to show cause why judgment should not be entered in favor of plaintiffs due to CIS' failure to file a pleading with regard to its no coverage defense. On June 10, 1988 defendant CIS responded to the motion for a show cause order and on June 29 filed a motion for summary judgment based on its no coverage argument. On August 1, 1988 plaintiffs filed an opposition to defendant's motion for summary judgment, incorporating their June 2 show cause motion. Because no material facts remain we proceed to decide the issue.

This is a medical malpractice suit. The one remaining defendant[3], Corporación In-

1. The blame for the lateness of this motion does not lie entirely on defendant CIS' shoulders. CIS was not made a party to this case until August 28, 1987, a mere four months before trial and some two years into the case. Had plaintiffs been vigilant in identifying and suing the appropriate insurer a reasonable time before trial, we would not now be adjudicating this case in the piecemeal, inverted fashion in which we have been forced. Due to the admitted omission of CIS, default was entered against CIS on November 2, 1987, but was subsequently set aside, with plaintiffs' consent, on November 23, 1987. On December 4, CIS answered the amended complaint, setting forth for the first time a defense of no coverage under the insurance policy at issue. In light of the Court's decision today on the merits of this defense, it is apparent that plaintiffs have *yet* to identify the appropriate insurer. Even assuming that plaintiffs were not aware until December 4, 1987, when CIS filed its answer, that CIS was alleging a no coverage defense, they at no subsequent time moved to amend their complaint to name as defendant the insurance carrier then alleged to have been covering the hospital on the day of plaintiff's injuries.

2. Given the procedural posture of this case, once plaintiffs consented to vacate Corporación Insular de Seguros' default and the Corporación asserted the affirmative defense of no coverage on the eve of trial, the Court had no choice other than to bifurcate the issue of coverage, which could have been rendered moot had defendant prevailed at trial, or to postpone the trial. The Court chose bifurcation upon the parties' consent.

3. There has been an ever-revolving merry-go-round of defendants in this case. In their original complaint, plaintiffs sued Dr. Cristóbal Jiménez, the doctor allegedly committing the malpractice, Hospital Regional de Fajardo, the hospital where the allegedly tortious acts took place, and Fondo de Compensación al Paciente, an insurer. The complaint was dismissed against Hospital Regional de Fajardo by Order of this Court dated January 21, 1986, and dismissed against the Fondo de Compensación al Paciente by Order dated February 18, 1986. On February 20, 1986, plaintiffs filed an amended complaint, adding Corporación de Servicios Médicos Hospitalarios, the private corporation which was operating Hospital Regional de Fajardo, as a defendant. Although default was entered against Corporación de Servicios Médicos on April 25, 1986, plaintiffs subsequently requested that Corporación Insular de Seguros, believed to be the insurer of Corporación de Servicios Médicos, *be substituted* as defendant *in place of* the defaulting defendant. The Court granted this request by Order dated September 21, 1987. On the second day of trial, the parties stipulated to the dismissal of the action against Dr. Cristóbal Jiménez on the grounds that he was immune from a malpractice suit in his

sular de Seguros, Inc. ("CIS") issued an insurance policy to Corporación de Servicios Médico Hospitalarios de Fajardo, the private corporation operating Hospital Regional de Fajardo under a contract with the Commonwealth. From the face of the policy it appears that the policy period commenced on December 1, 1982 and was to expire on December 1, 1985. Consideration for the insurance coverage was $49,187 annually, due on each anniversary of the inception of the policy. The policy provided for cancellation in the following manner:

> 3. Cancellation. *This policy may be cancelled by the named insured* by surrender thereof to the Company or any of its authorized agents or *by mailing to the Company written notice stating when thereafter the cancellation shall be effective.* This policy may be cancelled by the Company by mailing to the named insured at the mailing address shown in the Declarations, written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. *The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period.* Delivery of such written notice either by the named insured or by the Company shall be equivalent to mailing.

Plaintiffs sustained injuries on December 14, 1984 as a result of a surgical operation which went awry. There is no dispute that the alleged tortious actions of the Hospital on which plaintiff sued are matters covered under the policy. The issue at bar is whether the policy between CIS and the Hospital was in effect at the time of plaintiffs' injuries.

In the record appears a letter from Alejandro Pérez Sánchez of South Continental Insurance Agency, Inc., the agent of defendant CIS, dated December 13, 1984. The letter, addressed to Edicta de Latorre, a representative of the Hospital, purports to confirm a telephone conversation be-

tween Mr. Peña Sánchez and one "Adrián," apparently a representative of the Hospital. The letter states that Adrián informed South Continental that the Hospital obtained insurance with another company "effective December 1, 1984" and "[t]he main reason for the change was due to the fact that the Hospital obtained better limits and coverages at a more economical cost" with the other company. The letter from Mr. Peña Sánchez on South Continental stationery goes on to request that the Hospital send South Continental the original of the CIS policy or a "lost policy release" form signed by the insured, since the policy with CIS was not due to expire until December 1, 1985. Coverage under the policy with the new insurance company did not, in fact, begin until December 10, 1984.

Next appearing in the record is the December 20, 1984 response letter of Edicta de Latorre of the Hospital to Peña Sánchez of South Continental acknowledging receipt of the December 13 letter. In the letter Ms. de Latorre explained that the original of the policy could not be located. Included with the letter was the requested lost policy release form, entitled "Cancellation Receipt for all Cancellations Including Lost Policies." A term on the cancellation form provides "[t]hat the company is hereby released from all liability under said policy for any and all occurrences and contingencies happening after the effective date of this receipt." On this release form in the blank next to "Date of Cancellation," December 1, 1984 appears. Next to both "Return Premium" and "Additional Premium" the figure is zero. It appears that the hospital filled in these blanks. The form is stamped as having been received by CIS on January 16, 1985.

Plaintiffs argue on these facts that according to the terms of the policy contract between the hospital and CIS the policy was in effect on December 14, 1984 when plaintiffs sustained their injuries. Plaintiffs argue that the policy was not cancelled, according to its own terms, until written notice was received by CIS, in this

---

personal capacity as provided in the Puerto Rico Insurance Code. Corporación Insular de Segu-

ros thereby became the sole remaining defendant.

case on January 16, 1985, the date CIS stamped as having received the cancellation form.

There are several factors, however, which militate against plaintiffs' interpretation of the date of cancellation of the insurance policy being January 16, 1985. In the first place, the Hospital never did comply with the requirements of the policy in regard to cancellation. The policy requires that for the insured unilaterally to cancel the policy it shall mail to CIS "written notice stating when *thereafter* the cancellation shall be effective." The document which plaintiffs argue constitutes the contractual notice of cancellation, the so called "lost policy release" form, apparently filled out by the Hospital, indicates December 1, 1984 as the date of cancellation. December 1, 1984 is not a date "thereafter" the notice of cancellation, which was sent on December 20, 1984 and received on January 16, 1985. Therefore under plaintiffs' interpretation of the policy, the Hospital never cancelled its coverage because it did not comply with the policy's cancellation requirements by sending written notice stating when *thereafter* the cancellation shall be effective. It instead sent notice on December 20, 1984 setting forth December 1, 1984 as the date of cancellation. But plaintiffs do recognize that the policy was eventually cancelled. Plaintiffs' argument is therefore logically inconsistent—that the policy was not cancelled on or before December 13, because the purported cancellation did not comply with the terms of the policy, but that it was nevertheless subsequently cancelled on January 16, 1985 even though these same requirements in the policy still had not been met.

The second factor which indicates the parties' intent to cancel the policy as of December 1, 1984 is that the annual premium due on that date in consideration for the final year of coverage under the policy was not paid.

Not surprisingly, defendant's interpretation of the cancellation of the policy emphasizes the intent of the parties to cancel the insurance contract. Defendant argues that the letters of December 13 and 20 back and forth between the Hospital and CIS show that the Hospital unequivocally intended to substitute the CIS policy with a less expensive policy affording greater coverage. The letters, themselves and with the reference to a previous telephone conversation, also show that the Hospital's intent was communicated to CIS. Defendant argues that this sequence of events constitutes a cancellation of the insurance policy contract by mutual consent, which to be effective need not adhere to the procedures set out in the policy for unilateral cancellation. *See, e.g., Midstate Hauling Co. v. Reliable Insurance Co.,* 437 F.2d 616, 618 (5th Cir. 1971). We agree.

The applicable provision of the Insurance Code, 26 L.P.R.A. 1127, regulates unilateral cancellation only. It provides:

(1) The insurer may not cancel an insurance contract after it has been in force for a period of sixty (60) days or more, except for default in premium payment and for the reasons specified in the policy. Provided that the insured may request the cancellation of the insurance contract according to the terms specified in the policy.

An insurance policy is, however, a contract which may be cancelled by mutual consent like any other contract. The Puerto Rico Supreme Court has sanctioned cancellation of an insurance policy by mutual consent of the parties.

In insurance matters, the general rule recognized by North American jurisdictions is that neither the insured nor the insurer is entitled to rescind, cancel, surrender, or abandon an insurance contract, except when so provided by a statute, when stipulated in the contract, *when the parties thereto have thus stipulated or expressly given their consent,* or when one of the parties has breached such contract.

*Casanova v. P.R. Amer. Ins. Co.,* 106 D.P. R. 689, 6 Official Translation 960, 967 (1978) (emphasis added).

As the above cited passage indicates, Anglo–American common law is one of the sources upon which we are encouraged to draw when deciding insurance law

issues. *San Juan v. Great American Insurance Co.*, 86 JTS 64 (1986). *See also Diaz Irizarry v. Ennia, N.V.*, 678 F.Supp. 957, 961–62 n. 5 (D.P.R.1988). *Cf. Valle v. American International Insurance Co.*, 108 D.P.R. 692, 694 (1979). In fact, the Puerto Rico Supreme Court has acknowledged that the Puerto Rico Insurance Code embodies concepts from the insurance laws of the several states. *Casanova v. P.R. Amer. Ins. Co.*, 106 D.P.R. 689, 6 Official Translation at 966. Furthermore, when a law from another jurisdiction has been incorporated or adopted in Puerto Rico, it is presumed that the interpretation given that law in the place of its enactment has similarly been incorporated. *St. Paul Fire & Marine Insurance Co. and Lewis Business Forms of Puerto Rico, Inc. v. Caguas Federal Savings and Loan Association of Puerto Rico*, 88 JTS 110 (1988); *People v. Reyes Bonilla*, 100 P.R.R. 264, 267 (1971). *See also*, R. Elfrén Bernier y José A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, Capítulo 71, at 451–454.

■ We turn, therefore, to the insurance jurisprudence of the Anglo–American common law to resolve the issue presented. It is the majority rule that in addition to evidence of the insured's intent to cancel, effective cancellation requires either communication of that intent to the insurer or mutual consent to the cancellation by both parties. *Couch on Insurance* 2d (Rev. ed.) Sect. 67:40; *Glens Falls Insurance Co. v. Founders' Insurance Co.*, 25 Cal.Rptr. 753, 209 Cal.App.2d 157, 3 A.L.R.3d 1058 (1962); *Northeast Insurance Co. v. Concord General Mutual Insurance Co.*, 461 A2d 1056 (Me.1983); *Auto–Owners Insurance Co. v. Southern Michigan Mutual Insurance Co.*, 123 Mich.App. 39, 333 N.W. 2d 168 (1983). *Contra Travelers Insurance Co. v. Motorists Mutual Insurance Co.*, 649 S.W.2d 414 (Ky.App.1983) (misconstruing the leading case of *Glen Falls Ins. Co., supra* ). In a case directly on point, *Sizelove v. INA Insurance Co.*, 104 Ill.App. 3d 864, 60 Ill.Dec. 654, 433 N.E.2d 696 (1982), it was held that where procurement

of a new policy, intent, and mutual consent were present, the failure by the time of the fire to carry out the "merely ministerial act" of executing the lost policy releases, including setting a *retroactive* effective date of cancellation, would not prevent the intended cancellation of the original policy.

In this case, the Hospital's intent to cancel the CIS policy is clearly discernible from the two letters, from the Hospital's failure to pay the annual premium due on December 1, 1984, and from its marking December 1, 1984 as the effective date of cancellation of the policy on the lost policy release form. Communication of that intent and mutual consent to the cancellation by the Hospital and CIS are evidenced by the telephone conversation and by the letters in which CIS acknowledges the Hospital's reasons for changing insurance companies and requests the return of the original policy or a lost policy release form.

Given the facts of this case, it is not necessary to decide on exactly which date cancellation of the CIS policy occurred. It may have been December 1, 1984, the date the Hospital expressed as its intended retroactive cancellation date, December 10, the day the new policy actually began, December 13, the day the Hospital's intention to cancel and mutual consent to the cancellation were first expressed in writing, or the day of the telephone conversation between Adrian (representative of the Hospital) and Peña Sánchez, which must have occurred on or before December 13. In any event, there is no doubt that the cancellation occurred before December 14, 1984, the date of the actions which gave rise to the instant case.

WHEREFORE, the motion of defendant Corporación Insular de Seguros to dismiss is hereby GRANTED. The Clerk shall enter final judgment dismissing the complaint.[4]

IT IS SO ORDERED.

---

4. The "Judgment" entered on the verdict against

Corporación Insular de Seguros on December

28, 1987 was not a final judgment, as it did not
adjudicate all of the claims, specifically the
claim of no liability on the part of Corporación
Insular de Seguros due to lack of coverage at
the time of the occurrence, nor did the Court
order that partial judgment be entered under

F.R.Civ.P. 54(b). We now order that said "Judg-
ment" be set aside and the complaint be dis-
missed as to this last remaining defendant. *See*
Wright, Miller & Kane, *Federal Practice and
Procedure:* Civil 2d sect. 2654 and sect. 2655, at
41.