TANG, Circuit Judge:
 

 Codex Corporation (Codex) appeals a judgment of the district court affirming the bankruptcy court’s determination that Codex violated the Bankruptcy Code’s automatic stay provision, 11 U.S.C. § 362 (1982), and breached its contract with Computer Communications, Inc. (CCI). Codex unilaterally terminated its contract to purchase computer equipment from CCI after CCI filed a petition for reorganization under Chapter 11.
 

 I
 

 Codex designs and manufactures communications equipment and networks used for transmitting information between complex computer systems. CCI is a manufacturer
 
 *726
 
 of computer equipment and software. In April 1979, Codex and CCI entered into a “Joint Marketing and Development Agreement.” The heart of the Agreement provided that Codex would make minimum quarterly purchases of equipment and software from CCI for incorporation in Codex’s products. The parties executed an Amended Agreement on November 4, 1980 for a term of four years commencing April 1979. The Agreement provided for enhanced price discounts retroactive to April 1979. It contained the usual provisions for invoicing, payment, delivery, performance and warranty. The value of the purchases under the Agreement aggregated $12.5 million. CCI agreed to provide technical support, training, and to make spare parts available. The Agreement also provided for co-development of a “single line interface system” (SLI) which would permit CCI products to operate with Codex products. Codex agreed to pay CCI up to $75,000 for the development of SLI in six incremental payments. Finally, the Agreement stipulated that certain events, including bankruptcy, constituted default; established termination procedures; and stated that Massachusetts law governed the Agreement.
 

 On November 6,1980, two days after the parties executed the Amended Agreement, CCI filed a petition under Chapter 11 of the Bankruptcy Code. On December 30, 1980, Codex notified CCI that it was terminating the Agreement pursuant to ¶ 4.6.4 which provides:
 

 In the event of the appointment of a trustee, receiver or liquidator for all or a major portion of the property of either party, the commission by either party of any act of bankruptcy as defined in the United States Bankruptcy Act, as amended, the filing by either party of any voluntary petition in bankruptcy, ... that party shall be in default upon actual notice to the other party of such event, and the other party may terminate this Agreement as provided in paragraph 4.6.2 or 4.6.3, as the case may be.
 

 Codex failed to make its minimum purchase for the quarter ending December 31, 1980, and has failed to make its quarterly minimum purchase every quarter since.
 

 CCI filed suit in bankruptcy court on January 30, 1981 for injunctive relief and damages asserting that Codex had wrongfully repudiated the contract and had violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362.
 

 On February 23, 1981, Codex notified CCI that it was terminating purchases of equipment from CCI pursuant to ¶ 4.6.1 of the Agreement. This clause provides:
 

 In the event Codex gives CCI written notice at any time that Codex elects to terminate its obligation to purchase any Equipment pursuant to this Agreement, including the Minimum Commitment, (the “Codex Notice”) then any obligation of Codex to purchase any Equipment pursuant to this Agreement, including the Minimum Commitment, shall thereupon terminate. Within sixty (60) days of the Codex Notice, but not thereafter based upon the Codex Notice, CCI may elect to terminate this Agreement by giving Codex written notice of CCI’s election to terminate this Agreement (the “CCI Notice”). In the event CCI timely elects to terminate this Agreement based upon the Codex Notice: (i) this Agreement shall terminate; (ii) within one hundred and twenty days (120) of the CCI Notice or such additional period reasonably required to determine such amount, Codex shall pay to CCI an amount equal to ten percent (10%) of the portion which has not been ordered by Codex of the Minimum Commitment, reflecting the discount provided in Exhibit D, for the Buying Year in which the Codex Notice is given; provided, however, that such payment shall not be less than One Hundred Thousand Dollars ($100,000) and shall not be greater than Four Hundred Thousand Dollars ($400,000)....
 

 After Codex answered, CCI moved for partial summary judgment on the grounds that Codex’s termination violated the automatic stay provision of 11 U.S.C. § 362; and that the bankruptcy default clause in the agreement, 114.6.4, was void under 11 U.S.C. § 365(e) (1982) (prohibiting termination of most executory contracts and leases). In response, Codex argued that,
 
 *727
 
 under 11 U.S.C. § 365(e)(2)(state law exception), the contract was not subject to assumption by the trustee in bankruptcy and therefore, the automatic stay provision did not bar termination.
 

 The bankruptcy court granted CCI’s motion for summary judgment from the bench on April 30, 1981 and proceeded to hold a trial on the breach and damages issues. The findings and conclusions filed May 6, 1982 held that 11 U.S.C. § 365(e)(1) made the bankruptcy default clause unenforceable, the automatic stay of 11 U.S.C. § 362 prohibited Codex from unilaterally terminating the Agreement under either ¶ 4.6.1 or 114.6.4, Codex should have applied to the court for relief from the automatic stay, and Codex willfully violated the automatic stay. The court awarded general damages of $4,750,000 plus $250,000 in punitive damages.
 

 Codex appealed to the district court pursuant to the transitional provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The district court affirmed the general damage award and reversed the punitive damage award. Codex timely appeals.
 

 II
 

 A.
 
 Subject Matter Jurisdiction
 

 On June 28, 1982, the Supreme Court in
 
 Northern Pipeline Constr. Co. v. Marathon Pipe Dine Co.
 
 held that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) of the Bankruptcy Reform Act violated Article III of the Constitution. 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982) (plurality);
 
 id.
 
 at 91, 102 S.Ct. at 2881 (Rehnquist, J. concurring). The majority stated that since the grant of authority challenged in
 
 Northern Pipeline
 
 was not severable from the remaining grant of authority in § 241(a), no purported exercise of judicial authority by the bankruptcy court under § 241(a) was valid.
 
 See id.
 
 at 87 n. 40, 102 S.Ct. at 2880 n. 40 (plurality opinion);
 
 id.
 
 at 91-92, 102 S.Ct. at 2881-2882 (Rehnquist, J., concurring). The majority explicitly limited its holding to prospective effect, however, and stayed its judgment until October 4, 1982.
 
 Id.
 
 at 88, 102 S.Ct. at 2880 (plurality);
 
 id.
 
 at 92, 102 S.Ct. at 2882 (Rehnquist, J., concurring). The bankruptcy court in this case entered judgment nearly two months before
 
 Northern Pipeline
 
 was decided.
 

 Codex argues that it should be permitted to challenge the jurisdiction of the bankruptcy court despite the prospective effect of
 
 Northern Pipeline.
 
 The basis of Codex’s argument is that the Supreme Court failed to define what it meant by “prospectively” but cited
 
 Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxites De Guinee,
 
 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1981), and
 
 Chicot County Drainage Dist. v. Baxter State Bank,
 
 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), in support of the ruling.
 
 Northern Pipeline,
 
 458 U.S. at 88 n. 41, 102 S.Ct. at 2880 n. 41. These cases bar retroactive application because it would conflict with principles of res judicata. Codex argues that res judicata problems do not arise in this case because Codex raised the jurisdiction issue prior to judgment. It argues that the Supreme Court merely intended to prevent attempts to reopen judgments or raise jurisdictional challenges for the first time on appeal of currently pending bankruptcy cases.
 

 We reject Codex’s interpretation of
 
 Northern Pipeline
 
 and sustain the bankruptcy court’s jurisdiction. In holding that
 
 Northern Pipeline
 
 would apply prospectively, the Supreme Court explained that “retroactive application would ... surely visit substantial injustice and hardship upon those litigants who relied upon the Act’s vesting of jurisdiction in the bankruptcy courts.”
 
 Id.
 
 at 88, 102 S.Ct. at 2880. The litigants in this case so relied. Furthermore, the Court cited
 
 Buckley v. Valeo,
 
 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), in support of prospective application in addition to the cases emphasized by Codex.
 
 Buckley v. Valeo
 
 did not rely on a res judicata analysis but instead accorded
 
 de facto
 
 validity to prior administrative actions to allow for uninterrupted enforcement while Congress adopted valid legislation.
 
 Id.
 
 at 142, 96 S.Ct. at 693.
 
 *728
 
 This reasoning applies equally to the case at bar. Finally, this and other circuits have construed
 
 Northern Pipeline
 
 to validate judgments entered by bankruptcy courts before October 4, 1982.
 
 See In re Burley,
 
 738 F.2d 981, 984 (9th Cir.1984);
 
 In re Jones,
 
 804 F.2d 1133, 1137 (10th Cir.1986). In
 
 In re Jones,
 
 the Tenth Circuit rejected an argument similar to the one advanced by Codex.
 

 Wilson further contends that it contested the validity of jurisdiction prior to the decision in
 
 Northern Pipeline.
 
 The record supports this contention.... In light of this assertion by Wilson that jurisdiction was lacking, arguably the plaintiff’s reliance on jurisdiction would be tenuous here. However, the
 
 Northern Pipeline
 
 opinion makes no distinction between those cases where one of the litigants raised the jurisdictional issue before the decision and those cases where one raised the issue after the decision.
 

 804 F.2d at 1137. The plain meaning of the statement “our decision today shall apply only prospectively,”
 
 Northern Pipeline,
 
 458 U.S. at 88, 102 S.Ct. at 2880, forecloses a ruling that the bankruptcy court lacked subject matter jurisdiction.
 

 B.
 
 Standard of Review
 

 The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333, significantly changed the standard of review of bankruptcy decisions. Prior to the Act, a district court reviewed all bankruptcy court findings of fact for clear error and conclusions of law de novo.
 
 See, e.g., In re American Mariner Indus., Inc.,
 
 734 F.2d 426, 429 (9th Cir.1984). The Act mandates de novo review of all bankruptcy court decisions except those that are essentially bankruptcy matters such as administration of the bankrupt estate. 28 U.S.C. § 157 (Supp. II 1984).
 
 [1]
 
 The district court in this case reviewed the findings and conclusions of the bankruptcy court under the traditional standard. It held that the prospective application of
 
 Northern Pipeline
 
 mandated such review. Codex argues that the court erred because the prospective application articulated in
 
 Northern Pipeline
 
 applies to jurisdiction not standard of review. Codex argues that the court should have reviewed the bankruptcy court’s decision de novo as the question is essentially one of contract law.
 

 Northern Pipeline
 
 implicitly mandates continuance of the traditional standard of review. In striking down the statute, the court cited the deferential standard of review as one of its infirmities.
 
 Northern Pipeline,
 
 458 U.S. at 85, 102 S.Ct. at 2878. However, it validated the bankruptcy court’s authority to enter final judgments oh all matters in pending cases.
 
 Id.
 
 at 88, 102 S.Ct. at 2880. It follows that such judgments should be reviewed under the traditional standard.
 

 Because this court is in as good a position as the district court to review the findings of the bankruptcy court, we independently review the bankruptcy court’s decision.
 
 In re Pizza of Hawaii, Inc.,
 
 761 F.2d 1374, 1377 (9th Cir.1985). We review the bankruptcy court’s findings of fact under the clearly erroneous standard and its conclusions of law de novo.
 
 Id.
 

 C.
 
 Automatic Stay
 

 11 U.S.C. § 362 provides that the filing of a bankruptcy petition automatically stays “any act to obtain possession of property of the estate_” 11 U.S.C. § 362(a)(3). The courts below held that the automatic stay prohibited Codex from unilaterally terminating the Agreement. We agree. Even if Codex had a valid reason for terminating the Agreement, it still was required to petition the court for relief from the automatic stay under § 362(d).
 

 
 *729
 
 An examination of the legislative history and overall statutory scheme supports our conclusion. According to the legislative history, the purpose of the automatic stay is to give the debtor a breathing spell from creditors, to stop all collection efforts, and to permit the debtor to attempt repayment or reorganization. S.Rep. No. 989, 95th Cong., 2d Sess. 54-55,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5840-41. Congress intended the scope of the stay to be broad. “All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.” H.R.Rep. No. 595, 95th Cong., 2d Sess. 340
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5963, 6297.
 

 11 U.S.C. § 541 (1982) defines property of the estate. It neither explicitly includes or excludes contract rights. The definition includes “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). The legislative history states that the scope for this paragraph is broad. “It includes all kinds of property, including tangible or intangible property [and] causes of ac-tion_” H.R.Rep. No. 595 at 367,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News at 6323. This court has held that insurance contracts are embraced in the statutory definition of “property.”
 
 In re Minoco Group of Companies, Ltd.,
 
 799 F.2d 517, 519 (9th Cir.1986).
 

 The automatic stay does not permanently prohibit a party from retrieving property from the possession of the bankrupt estate. Section 362(d) provides that upon notice and hearing, the court shall grant relief from the stay. Congress intended the relief proceeding to be a summary one in which the only issues will be the “lack of adequate protection, the debtor’s equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from the stay.” S.Rep. No. 989 at 55,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News at 5841.
 

 Codex argues that the trial court erred because the contract was not property of the estate. It asserts that 11 U.S.C. § 365 (1982), pertaining to executory contracts and unexpired leases, sanctioned its termination of the contract. Section 365 provides that a trustee may assume or reject any executory contract or unexpired lease of the debtor. The contract, argues Codex, never became property of the estate because the trustee did not and could not assume it. An executory contract is one in which performance remains due to some extent on both sides. S.Rep. No. 989 at 58,
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News at 5844. Section 365(e) generally prohibits exercise of bankruptcy termination clauses in such contracts:
 

 (1) Notwithstanding a provision in an ex-ecutory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified ... at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
 

 ******
 

 (B) The commencement of a case under this title....
 

 11 U.S.C. § 365(e). Subparagraph (2), however, creates an exception where “applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or an assignee of such contract or lease_” 11 U.S.C. § 365(e)(2)(A)(i). Codex argues that Massachusetts law excused it from accepting performance from an assignee for three reasons: 1) the Agreement was a personal service contract; 2) even if it was not a personal service contract, it was a contract based on “a relation of personal confidence,”
 
 see Paper Products Machine Co. v. Safepack Mills,
 
 239 Mass. 114, 122, 131 N.E. 288, 290 (1921);
 
 In re Beverages Int'l, Ltd.,
 
 61 B.R. 966, 974 (Bankr.D.Mass.1986); and 3) assignment of the contract would have revealed Codex’s trade secrets.
 

 The bankruptcy court held that § 365(e)(2) did not permit Codex to terminate the contract unilaterally finding that
 
 *730
 
 the Amended Agreement was not a contract for personal services. Likewise, the district court concluded that the contract was almost entirely for the sale of goods. We need not reach that question, however, because we hold that even if § 365(e)(2) allowed Codex to terminate the contract, § 362 automatically stayed termination.
 
 See In re Minoco Group of Companies, Ltd,.,
 
 799 F.2d at 519 (the right to cancel an insurance policy is stayed under section 362(a)(3)).
 

 Codex argues that, since executory contracts do not automatically vest in the bankrupt estate, but must be assumed by the executor, they are not automatically stayed. Codex cites
 
 Collier on Bankruptcy,
 
 which states “[presumably the automatic stay of section 362, which prohibits a creditor from terminating or accelerating after the petition, will not apply to these special kinds of contracts or leases.” 2
 
 Collier on Bankruptcy
 
 11365.06[1] (15th ed. 1987). Codex also cites several cases that follow the
 
 Collier
 
 analysis.
 
 See In re Tonry,
 
 724 F.2d 467, 469 (5th Cir.1984);
 
 In re Bofill,
 
 25 B.R. 550, 552 (Bankr.S.D.N.Y.1982);
 
 In re New Town Mall,
 
 17 B.R. 326, 329 (Bankr.D.S.D.1982).
 

 We find this argument unavailing. The version of 11 U.S.C. § 541 in effect at the time
 
 [2]
 
 plainly stated that a contract comes within the definition of “property of the estate” despite non-assignability or the existence of a bankruptcy default clause.
 

 [A]n interest of the debtor becomes property of the estate ... notwithstanding any provision—
 

 (A) that restricts or conditions transfer of such interest by the debtor; or
 

 (B) that is conditioned on the insolvency or financial condition of the debtor, or the commencement of a case under this title, or the appointment of or the taking possession by a trustee ... and that affects or gives an option to effect a forfeiture, modification, or termination of the debtor’s interest in property.
 

 11 U.S.C. § 541(c)(1). Codex argues that even if § 541(c)(1) overrides the contract, it does not override Massachusettes law. We read the introductory phrase, “notwithstanding any provision,” broadly to include not only contract provisions but also any provision of non-bankruptcy law.
 
 See Matter of Neavear,
 
 674 F.2d 1201, 1205-06 & n. 12 (7th Cir.1982) (social security benefits are “property of the estate” under section 541(c)(1)(A) even though they are expressly “not ... transferable or assignable” under 42 U.S.C. § 207);
 
 In re Dawson,
 
 13 B.R. 107, 108-09 (M.D.Ala.1981) (disability benefits made non-assignable by state law were “property of the estate” under § 541(c)). We note that Congress recently clarified the statute and it now states “notwithstanding any provision in an agreement, transfer instrument,
 
 or applicable non-bankruptcy
 
 law_” 11 U.S.C. § 541(c)(1) (Supp. II 1984) (emphasis added).
 

 Neither are we persuaded by the interpretation in
 
 Collier on Bankruptcy.
 
 We agree with the analysis of the bankruptcy court in
 
 In re Wegner Farms Co.,
 
 49 B.R. 440 (Bankr.N.D.Iowa 1985), which held that even if, under section 365(e), a bonding agreement cannot be assumed by the debt- or, it must be terminated pursuant to the terms of the automatic stay provision.
 

 The only authority Merchants cites in support of this proposition is 2
 
 Collier on Bankruptcy
 
 ¶ 365.05[1] (15th ed. 1985) where it is stated: “Presumably the automatic stay of section 362, which prohibits a creditor from terminating or accelerating after the petition, will not apply to these special kinds of contracts or leases.” The Court concludes this exposition on the interplay between section 362 and 365 is incorrect for several reasons.
 

 In re Wegner Farms Co.,
 
 49 B.R. at 444. The reasons stated by the
 
 Wegner
 
 court include; first, the fact that no executory contract exception is listed among the stay exemptions in section 362(b); second, the court noted that elsewhere in the code, Congress expressly overrode the stay provision but did not do so in § 365; and finally, the court concluded that “not ex
 
 *731
 
 empting this brand of executory contracts is consistent with the purposes and policies underlying the staying of actions against a debtor postpetition.”
 
 Id.
 
 at 445.
 

 The legislative history emphasizes that the stay is intended to be broad in scope. Congress designed it to protect debtors and creditors from piecemeal dismemberment of the debtor’s estate. The automatic stay statute itself provides a summary procedure for obtaining relief from the stay. All parties benefit from the fair and orderly process contemplated by the automatic stay and judicial relief procedure. Judicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay. Accordingly, we affirm the bankruptcy and district courts on the ground that Codex violated the automatic stay by unilaterally terminating the contract and do not reach the question of whether this contract is non-assignable under Massachusetts law.
 

 D.
 
 Damages
 

 We may affirm the courts below on any ground supported by the record.
 
 Smith v. Block,
 
 784 F.2d 993, 996 n. 4 (9th Cir.1986);
 
 United States v. County of Humboldt,
 
 628 F.2d 549, 551 (9th Cir.1980). The automatic stay of § 362 barred Codex from unilaterally terminating the Agreement. Even if Codex had some reason for terminating the Agreement as a matter of contract law, it violated bankruptcy law by failing to obtain relief from the automatic stay. A party who violates the automatic stay may be held in contempt and the court may award damages to compensate the other party for actual loss suffered.
 
 See Matter of Walters,
 
 41 B.R. 511, 516-17 (W.D.Mo.1984);
 
 Matter of DePoy,
 
 29 B.R. 471, 480 (N.D.Ind.1983);
 
 In re Lowry,
 
 25 B.R. 52, 56-57 (E.D.Mo.1982);
 
 In re Miller,
 
 22 B.R. 479, 482 (D.Md.1982);
 
 In re Cusanno,
 
 17 B.R. 879, 882 (E.D.Pa.1982);
 
 Campbell v. Gerace,
 
 13 B.R. 575, 577 (S.D.Ohio 1981);
 
 but see Crowe & Assoc. v. Bricklayers and Masons Union Local No. 2,
 
 20 B.R. 225, 229 (E.D.Mich.1982),
 
 aff'd on other grounds,
 
 713 F.2d 211 (6th Cir.1983). We hold that awarding damages to CCI for Codex’s violation of the automatic stay was within the discretion of the bankruptcy court.
 
 Id.
 

 [3]
 

 Finally, Codex argues that the bankruptcy court erred in awarding damages because: 1) CCI failed to establish a right to lost profits as a lost volume seller, 2) CCI failed to assume the Agreement prior to trial, 3) CCI failed to prove its costs necessary for a determination of lost profits, and 4) CCI failed to establish its lost profits with reasonable certainty. Both courts below observed that most of these arguments are actually attacks on the underlying judgment. The bankruptcy court concluded that CCI’s manufacturing costs were 41% to 45% of the sales price of the Amended Agreement and awarded damages in the amount of approximately 41% of the minimum purchase amount required under the Agreement. Codex also challenges the amount of the damage award as excessive because: 1) the award does not reflect the fact that H 4.6.1 permits Codex to limit purchases, 2) there is no guarantee that the reorganization would be successful, 3) CCI failed to mitigate its damages and 4) the damage award should have been discounted. We will affirm an award of damages unless it is clearly unsupported by the evidence or grossly excessive, monstrous, or shocking to the conscience.
 
 Stinnett v. Damson Oil Corp.,
 
 813 F.2d 1394, 1398 (9th Cir.1987). We find the damage award reasonable.
 

 Ill
 

 We affirm the judgment of the district court sustaining the decision of the bankruptcy court. Codex violated the automatic stay statute by terminating its contract unilaterally rather than applying for relief from the bankruptcy court. The bankrupt
 
 *732
 
 cy court properly awarded damages to CCI for its injury resulting from Codex’s violation of bankruptcy law.
 

 AFFIRMED.
 

 [1]
 

 . The statute provides:
 

 In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge’s proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
 

 28 U.S.C. § 157(c)(1).
 

 [2]
 

 . Congress amended § 541 in 1984.
 

 [3]
 

 . In 1984, Congress amended the statute to provide:
 

 an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.
 

 11 U.S.C. § 362(h) (Supp. II 1984). We do not rely on this section because it was not in effect when this action was filed.