In re WESTERN ASBESTOS
COMPANY, et al.,
Debtors.

No. 3:03–CV–0989 MJJ.

United States District Court,
N.D. California.

July 14, 2004.

**860**

Charles D. Axelrod, Stutman Treister & Glatt, Los Angeles, CA, Eric M. Frater, Orrick Herrington & Sutcliffe LLP, San Francisco, CA, Frederick D. Holden, Orrick Herrington & Sutcliffe LLP, San Francisco, CA, Brian D. Lee, Stutman Treister & Glatt, Los Angeles, CA, for debtors.

Christopher H. Hart, McNutt & Litteneker LLP, San Francisco, CA, Kirk C. Chamberlin, Charlston, Revich & Chamberlin LLP, Los Angeles, CA, Rebecca U. Litteneker, McNutt & Litteneker LLP, San Francisco, CA, Gregory C. Nuti, McNutt & Litteneker LLP, Stephen F. Biegenzahn, Albert, Weiland & Golden, LLP, Costa Mesa, CA, Brent Coon, Brent Coon & Associates, Beaumont, TX, Joseph D. Frank, Neal Gerber & Eisenberg LLP, Chicago, IL, Stephen F. Biegenzahn, Albert, Weiland & Golden, LLP, Costa Mesa, CA, for creditor.

William Reid Brown, McCurdy & Brown, LLP, Menlo Park, CA, Gerald F. Ellersdorfer, Kaufman & Logan LLP, San Francisco, Michelle D. Jew, Kaufman & Logan LLP, San Francisco, CA, Peter J. Logan, Kaufman & Logan LLP, San Francisco, CA, Kevin G. McCurdy, McCurdy & Brown, Menlo Park, CA, Richard A. Rogan, Jeffer Mangels Butler & Marmaro LLP, San Francisco, CA, Holly R. Shilliday, Jeffer Mangels Butler & Marmaro LLP, San Francisco, CA, James S. Yoder, White and Williams LLP, Wilmington, DE, for appellant.

## ORDER *VACATING* BANKRUPTCY COURT'S FEE ORDER

JENKINS, District Judge.

### INTRODUCTION

Before the Court is an unopposed appeal from three law firms that represented the plaintiffs in personal injury suits against the Western Asbestos Company and its successors. The firms appeal the January 26, 2004, order of the Honorable Leslie Tchaikovsky of the United States Bankruptcy Court for the Northern District of California disapproving fees paid to them by one of Western Asbestos' insurers as part of a settlement agreement. Because the bankruptcy court did not have subject matter jurisdiction over the fees paid to the appellants, the court's order is VACATED.

### FACTUAL BACKGROUND

Appellants the Wartnick Law Firm; David A. Himmelman, Special Trustee of the Harry Fred Wartnick 2003 Revocable Trust; Kazan, McClain, Edises, Abrams, Fernandez, Lyons & Farrise, a Law Corporation; and Brayton Purcell (collectively, "Appellants") represented numerous claimants in successful asbestos-related personal injury claims against the Western

Asbestos Company and its successors, the Western MacArthur Company and the MacArthur Company (collectively "Debtors"). Debtors were distributors and installers of products manufactured by the Johns–Manville Corporation. Appellants were to be compensated for their legal representation pursuant to contingent fee arrangements that paid them between 25 and 40 percent of a client's gross recovery. (Appellants' Opening Br. at 3).

After one of Debtors' primary insurers, United States Fidelity and Guaranty Company, and its affiliates the St. Paul Fire & Marine Insurance Company and the St. Paul Companies, Inc. (collectively, "USF & G") stopped providing coverage, Debtors brought suit against USF & G. Appellants reportedly spent thousands of hours in 2001 and 2002 negotiating with Debtors and its insurance carriers, primarily USF & G, in order to obtain payment of damage awards for their clients and other asbestos victims. On June 3, 2002, a settlement agreement (the "Settlement") was signed by Appellants, Debtors and USF & G resolving all coverage disputes. (*Id.* at 4). The Settlement required Debtors to file for Chapter 11 bankruptcy, fund a Plan of Reorganization creating a $740 million Section 524(g) trust (the "Trust") to be used for the benefit of present and future asbestos claimants, and award some present claimants $160 million for giving up the right to sue USF & G. (*Id.* at 5). Additionally, USF & G agreed to pay Appellants $12.3 million plus costs for their legal work leading to the Settlement, which was to be paid immediately and was not contingent on approval of the Plan.[1] (Settlement at § 3.2(a)(iv); *Id.* at § 3.2(d)). The Settlement also provided fees for Debtors' counsel, for the Legal Representative for Future Claimants ("Futures Representative"), and for Appellants' work post-settlement. (Settlement at § 3.2(a)(i)-(iii)).

On November 22, 2002, Debtors filed Chapter 11 bankruptcy petitions, and on November 18, 2003, Debtors, the Official Unsecured Creditors' Committee and the Futures Representative, the Honorable Charles B. Renfrew, (collectively the "Plan Proponents") filed a Second Amended Plan for Reorganization (the "Plan"). (Appellants' Opening Br. at 8). This plan was objected to by the other insurance companies that had contracts with Debtors, including Hartford Accident & Indemnity Co. ("Hartford"), since the Plan enjoined them from suing USF & G for contribution, subrogation and bad faith failure to settle within policy limits. (U.S. Fire Insurance Co. Br. on Appeal of Hartford Settlement Order at 2). The Plan was approved by the Honorable Leslie Tchaikovsky of the United States Bankruptcy Court for the Northern District of California on January 27, 2004. (Appellants' Opening Br. at 8). However, the court found the $12.3 million payment to Appellants unreasonable pursuant to Section 1129(a)(4) of Title 11 and disallowed it. In a January 26, 2004 order, the court held that Appellants must pay the $12.3 million to the Trust or any payments by the Trust to Appellants' clients must be reduced by the attorney fee portion of the proposed distribution, up to $12.3 million. (January 26, 2004 order ("Fee Order") at 1–2, JR 15510–11).

Following the confirmation, another $1.15 billion was added to the Trust as a result of a settlement with Hartford. (Appellants' Opening Br. at 8). The five remaining objecting parties appealed the confirmation of the Plan and Hartford's

---

1. The $12.3 million was paid to Appellants in June of 2002. (Testimony of David M. McClain, JR 24531).

settlement, but a settlement was reached, and on April 16, 2004, this Court affirmed the confirmation of the Plan. The current appeal is the sole remaining issue for this Court's consideration. The Trust is currently holding $12.3 million pursuant to the Fee Order. (Trustees Br. at 1). Although Appellants' brief is unopposed, the trustees of the Trust have filed a brief arguing that if the payment is disallowed, the money should remain an asset of the Trust rather then be returned to USF & G. (*Id.* at 3). Additionally, the Plan Proponents have filed a joint amicus brief asking this Court to reverse the Fee Order.

## LEGAL STANDARD

■■■ The Court has jurisdiction to hear this appeal under 28 USC § 158(a), which grants district courts jurisdiction to "hear appeals from 'final judgments, orders, and decrees' of bankruptcy judges" entered in cases and proceedings referred to the bankruptcy judges under 28 U.S.C. § 157. *In re Lewis,* 113 F.3d 1040, 1043 (9th Cir.1997). Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order or decree or remand with instructions for further proceedings." This Court reviews the bankruptcy court's conclusions of law de novo. *In re Comput-*

*er Communications Inc.,* 824 F.2d 725, 728 (9th Cir.1987). Findings of fact regarding a core proceeding are reviewed under the clearly erroneous standard, but findings regarding a non-core proceeding are reviewed de novo. *Id.* Whether property is included in a bankruptcy estate is a question of law reviewed de novo. *Cisneros v. Kim (In re Kim),* 257 B.R. 680, 684 (9th Cir. BAP 2000).

## ANALYSIS

### I. Jurisdiction Over the $12.3 Million

■■■ Under 28 U.S.C. § 157(a), a district court may refer to a bankruptcy judge any bankruptcy-related case or proceeding over which the district court has jurisdiction pursuant to 28 U.S.C. § 1334. A bankruptcy judge may hear and determine all cases arising under title 11 of the United States Code and "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Core proceedings include matters concerning the administration of the estate; allowance or disallowance of claims against the estate or exemptions from property of the estate; proceedings to determine, avoid or recover fraudulent conveyances; and other proceedings affecting the liquidation of the assets of the estate. 28 U.S.C. § 157(b)(2).[2] A bank-

---

2. The full text of 28 U.S.C. § 157(b)(2) reads: Core proceedings, include, but are not limited to, (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11, but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D)

orders in respect to obtaining credit; (E) orders to turn over property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from

ruptcy judge may also hear a proceeding that is not core but is still related to a title 11 case; however, the bankruptcy judge may only submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1). Bankruptcy courts "have no jurisdiction over proceedings that have no effect on the estate of the debtor." [3] *Celotex v. Edwards*, 514 U.S. 300, 309, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

■ To determine whether a proceeding is "core," the Court looks at whether the rights involved "exist independently of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *United States v. Yochum*, 89 F.3d 661, 670 (9th Cir.1996), *quoting In re Cinematronics, Inc.*, 916 F.2d 1444, 1449–50 (9th Cir.1990). The payment to Appellants by USF & G, at its most basic level, had little to do with Debtor's bankruptcy. The payment was made as part of a settlement of USF & G's liability to victims of disease caused by products used by a company USF & G insured. Whether or not Debtors filed for bankruptcy, USF & G was going to have to pay out substantial amounts of money as a result of the insurance contracts it had entered into. The negotiations and substantial research that Appellants are reportedly being compensated for, while done under the shadow of the impending bankruptcy petition, in actuality had little to do with the bankruptcy itself, and the payment was made before the bankruptcy petition was filed. The payment is not unique to the bankruptcy,

and was not affected by the filing of the bankruptcy petition since the language of the Settlement specifically stated that the payment would not be returned if the Plan was disapproved. (Settlement at 3.2(d)). Therefore, there is scant evidence to support a finding that the $12.3 million payment was a core proceeding.

■ For the purposes of obtaining jurisdiction over a non-core proceeding, a cause of action is related to a bankruptcy if its outcome "could alter the debtor's rights, liabilities, options, or freedom of action" and impacts the handling or administration of the estate. *In re Fietz*, 852 F.2d 455, 457 (9th Cir., 1988), *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). In the case at bar, there was no specific cause of action related to the $12.3 million payment. The closest thing to a cause of action with respect to this payment was that it was mentioned in arguments by the insurance companies initially objecting to the Plan, although the objection was not discussed in much detail in their briefs. (Legal Issues Mem. at 30, JR 9711). The bankruptcy court's decision to take jurisdiction over this payment seemed spurred by these objections.

■ Assuming *arguendo* that these objections—which have now been retracted since all objectors have settled—are sufficient to qualify as a "proceeding," then whether USF & G's payment of the $12.3 million to Appellants has an effect on Debtor's estate and is thus "related" depends on whether that money was the property of Debtor's estate. Under 11 U.S.C. § 541(a), property of the estate includes "all legal or equitable interests of

---

claims brought by the estate against persons who have not filed claims against the estate; and (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except

personal injury tort or wrongful death claims.

3. The bankruptcy court did not explain whether it considered the payment in question a core or non-core proceeding.

the debtor in property as of the commencement of the case." *In re Minoco,* 799 F.2d 517, 518 (9th Cir.1986). Additionally, it includes any interest the debtor acquires or becomes entitled to within 180 days of filing the bankruptcy petition. 11 U.S.C. § 541(a)(5). Congress intended this definition to be broad, including both tangible and intangible property. *Minoco,* 799 F.2d at 518. Insurance contracts, particularly products liability policies, are included in this definition, and can even be an estate's most valuable asset. A debtor's estate is worth more with the insurance policy than without. *Id.* at 519, *citing A.H. Robins v. Piccinin,* 788 F.2d 994 (4th Cir.1986).

 Therefore, Debtor's insurance policy with USF & G can be properly classified as property of the estate. If the payment to Appellants was made after but not less than 180 days after the bankruptcy petition was filed, the $12.3 million is arguably property of the estate and could fall within the court's jurisdiction. However, in this instance the $12.3 million was not property of the estate because the payment was made before the petition was filed. The Settlement stated that USF & G would pay Appellants for their work leading up to the Settlement within 10 days of its signing, which occurred on June 3, 2002, and the payment was indeed made that month. Debtors did not file for bankruptcy until November 22, 2002. The agreement also stated that in the event the fees were disallowed by the court, they would be returned to USF & G. (Settlement at 3.2(d)). Nowhere does it provide that the $12.3 million could be paid into the Trust if disallowed by the court. There is no evidence to suggest that the Trust would have been $12.3 million larger if USF & G had not paid appellants, since the size of the Trust was determined before discussions of Appellants' fee. (Ap-

pellant's Opening Br. at 14). Therefore, the $12.3 million was outside of the bankruptcy court's authority. "A plan confirmation cannot magically revest" a debtor "with property that was never property" of the bankruptcy estate. *In re Boyd,* 11 F.3d 59, 60 (5th Cir.1994). "There is ample authority indicating that transfers made to pre-petition creditors out of non-estate assets may not be avoided ... A debtor may do what he will with non-estate funds." *In re Hargis,* 887 F.2d 77, 79 (5th Cir.1989).

This conclusion is consistent with the conclusions of a case referenced by both Appellants and the bankruptcy court, *In re Combustion Engineering,* that is currently on appeal to the Court of Appeals for the Third Circuit. 295 B.R. 459 (Bankr.D.Del.2003). In *Combustion,* an attorney representing asbestos victims was paid $20 million by the asbestos company's parent organization for his help negotiating a settlement and recommending his clients support it. *Id.* at 476. The bankruptcy court, concerned that this payment was made in bad faith, created a conflict of interest, and that the attorney had misrepresented himself on some occasions as the representative of all the asbestos claimants but on other occasions as only representing his specific clients, found the fee inappropriate and prohibited him from collecting fees from his clients until he obtained written waivers from them consenting to him accepting the $20 million payment. *Combustion,* 295 B.R. at 478. However, the court noted that it had "no jurisdiction to compel repayment" of the $20 million fee. *Id.* at 479. In an unpublished opinion, the district court went further and held that the bankruptcy judge did not even have the subject matter jurisdiction to require the attorney to obtain waivers. (Decl. of Jeffrey Rehfeld, Ex. 6 at 7, JR 6306). It should be noted that in the case at bar, the bankruptcy court re-

jected arguments that the Plan Proponents acted in bad faith by trying to buy off various claimants and does not cite bad faith as a basis for the Fee Order. (Legal Issues Mem. at 30, JR 9711; Mem. of Decision at 16, JR 15908). Appellants were only obligated to recommend that their clients vote in favor of the Plan if it was consistent with their professional obligation to their clients. (*Id.* at 27–28).

Virtually no caselaw supports the bankruptcy court's decision to disapprove a payment made to a third party's counsel by a party that is neither a debtor nor plan proponent. Nor is there obvious statutory authority allowing a court to do so. In several sections of title 11, Congress did specifically require court approval of certain legal fees. Section 329 allows a court to reduce or cancel fees to be paid to attorneys representing a debtor, and section 330 allows the same for a trustee's counsel. But neither of these apply to the current situation, and there is no title 11 section that addresses a circumstance analogous to the one at bar.

### CONCLUSION

For the foregoing reasons, the Court VACATES the bankruptcy court's Fee Order.

**IT IS SO ORDERED.**