**In re Rodger Dale BENZ and Maria Yim–King Benz, Debtors.**

**Rodger Dale Benz; Maria Yim–King Benz, Appellants,**

**v.**

**Dtric Insurance Company, Appellee.**

**BAP No. HI–06–1274–MoBK.**

**Bankruptcy No. 05–04020.**

United States Bankruptcy
Appellate Panel
of the Ninth Circuit.

Argued and Submitted on Jan. 19, 2007.

Filed March 28, 2007.

---

Appeal from the United States Bankruptcy Court for the District of Hawaii, Hon. Robert J. Faris, Chief Bankruptcy Judge, Presiding.

Lissa D. Shults and Bradley R. Tamm, Shults & Tamm, LLP, Honolulu, HI, for appellant.

Daniel M. Chen, Sakai Iwanaga Sutton Law Group, Honolulu, HI, for appellee.

Before: MONTALI, BRANDT and KLEIN, Bankruptcy Judges.

## OPINION

DENNIS MONTALI, Bankruptcy Judge.

Debtors, defendants in a pre-petition lawsuit pertaining to their former residence, tendered defense of that action to their insurer. After the petition date, the insurer informed the debtors that it would no longer provide a defense to the lawsuit, stating that the claims in the state court lawsuit were excluded from the coverage of their homeowners' policy. The debtors filed a contempt motion against the insurer, arguing that the withdrawal of the defense and the communication thereof violated the automatic stay. The bankruptcy court denied the motion, and the debtors appealed. We make clear in this Opinion that a party's communication to a debtor that the terms of a contract do not obligate that party to perform certain acts is not, in and of itself, a violation of the automatic stay. Accordingly, we AFFIRM.

## I. FACTS

Appellants Rodger and Maria Benz ("Debtors") held a homeowners' insurance policy with appellee DTRIC Insurance Company, Limited ("Insurer") with a term running from August 15, 2002 to August 15, 2003. On August 4, 2003, Debtors requested that the policy be cancelled effective July 25, 2003, the date of the recordation of a deed conveying title of their residence to David and Patricia Knight (the "Knights").

On May 25, 2004, the Knights filed a state court lawsuit against Debtors and others arising out of their purchase of Debtors' former residence. In particular, the Knights alleged that the property contained significant construction and other defects resulting in injury to their son. The Knights asserted claims of fraud and misrepresentation, breach of contract, fail-

ure to disclose, construction defects and negligence, bad faith, unfair and deceptive trade practices, and strict liability.

Because the wrongful acts asserted by the Knights purportedly occurred while Debtors' homeowners policy was still effective, Debtors tendered the defense of the lawsuit to Insurer. Insurer agreed to provide a defense to the lawsuit, *"subject to the following reservation of rights"*:

> By paying for your defense, [Insurer] does not waive, and will not be estopped from asserting, any of the terms or conditions contained in the insurance policy or any defenses [Insurer] may have to any alleged liability under the policy, including but not limited to any alleged liability to settle any claims made against you or to indemnify you against any judgment for damages. [Insurer] will not indemnify you for any liability not covered under the insurance policy. *[Insurer] reserves the right to stop paying for your defenses or to decline to participate in any settlement of claims against you should it be determined that there is no potential for [Insurer] to have to indemnify you under the insurance policy.*

(Emphasis added.) Insurer further stated:

> Nothing in this letter should be construed or deemed to be a waiver of any of [Insurer's] rights under your insurance policy. [Insurer] reserves the right to assert any other reason for non-coverage or forfeiture of coverage which may be or may become apparent either from further review of material already provided or from additional information made available to or obtained by [Insurer].

Insurer commenced its defense of the lawsuit, retaining counsel to represent Debtors. More than one year later (on October 14, 2005), Debtors filed their chapter 13 petition. The Knights filed a mo-

tion for relief from stay, noting that modifying the stay to allow prosecution of their lawsuit would not harm Debtors or the estate since the Insurer was defending the lawsuit and any recovery would be limited to insurance proceeds. Appellants contend on appeal that they did not file a substantive objection to the motion because Insurer was paying for the defense of the lawsuit. The bankruptcy court granted the Knights relief from the automatic stay on January 11, 2006, with an order providing that

> the automatic stay is hereby modified to permit [Knights] to proceed with the state court action ... for the limited purpose of liquidating the claims (i.e., allowing the state court to determine liability and damages) against Debtors and pursuing recovery of any available insurance proceeds from Debtors' liability insurers, that is, limiting the ability of Movants to enforce the judgment against Debtors to Debtors' insurance coverage. Movants would not seek to enforce any judgment against Debtors' bankruptcy estate except through and with the permission of the Bankruptcy Court.

The state court litigation progressed, with Insurer paying for the defense.

On May 11, 2006, Insurer sent a letter to Debtors informing them that it would no longer defend the lawsuit or indemnify them for damages or expenses arising from the lawsuit. Insurer stated that "the Knights' allegations of property damage in the complaint and summons are excluded from coverage under exclusions 1a and 1b" and that some of the claims alleged by the Knights were not " 'occurrences' under a liability insurance policy." Insurer further noted that punitive damages were not covered by the policy and that "there is no indication that the Knights' allegations of bodily injury and property damage oc-

curred during the policy period." There-fore, Insurer contended that it had no obligation to defend or indemnify Debtors in connection with the lawsuit.

Eleven days later, Debtors filed their Motion for Order to Show Cause Why [Insurer] Should Not Be Held in Violation and Contempt of the Automatic Bankruptcy Stay (the "Contempt Motion"). Insurer opposed the Contempt Motion, arguing *inter alia* that withdrawal of the defense did not fall within any of actions stayed by 11 U.S.C. § 362(a).[1]

At the hearing on the Contempt Motion, the court issued an oral ruling: "For me, the starting point is what the statute [section 362] actually says, what [C]ongress wrote about what the automatic stay would be, not what we might think it ought to be or logically should be, but what [C]ongress said it would be." The court noted that withdrawal of the defense did not constitute commencement or continuation of an action against Debtors and further observed that withdrawal of the defense was not an act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See* 11 U.S.C. § 362(a)(3). The court analogized Insurer's withdrawal of a defense to a party under the contract informing a debtor that it owes Debtor nothing under that contract:

> And, basically, I don't think the automatic stay is intended to prevent parties to contracts with the debtor from saying to the debtor, I think I've performed this contract; I don't think I owe you any more under this contract. I don't think doing that is a violation of the automatic stay and I think that's the closest analogy that I can think of to

what [Insurer] did here. So I don't see a violation of the automatic stay.

Finally, the bankruptcy court found that Debtors had not demonstrated damages arising from a violation of the stay, even if a violation had occurred.

The bankruptcy court indicated that it was possible that Debtors might have a meritorious claim against Insurer for wrongful denial of coverage, but that a wrongful denial of such claim should not be confused with a violation of the automatic stay. In other words, Insurer did not violate the automatic stay by communicating its position regarding its liability or duty under the insurance policy, although it may have violated a duty of good faith or a duty to defend under the contract itself. Breaches of the latter duties, however, are not violations of the automatic stay.

The bankruptcy court entered an order denying the Contempt Motion on August 3, 2006, and Debtors filed a timely notice of appeal on the same date.

## II. ISSUE

Did Insurer violate the automatic stay by withdrawing its defense of the lawsuit and by communicating to Debtors its belief that the claims in the lawsuit fell outside the scope of their homeowners' policy and thus outside of any contractual obligation to defend?

## III. STANDARD OF REVIEW

"We review de novo whether the automatic stay provision of [section] 362(a) has been violated." *California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1150 (9th Cir.1996), citing *Chugach Timber Corp. v. N. Steve-*

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgat-ed prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23.

doring & Handling Corp. (In re Chugach Forest Prods., Inc.), 23 F.3d 241, 244 (9th Cir.1994).

## IV. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b). We have jurisdiction under 28 U.S.C. § 158(a)(1) and (b)(1).

## V. DISCUSSION

The parties have not cited any federal cases specifically addressing the issue of whether an insurer violates the automatic stay by communicating its belief that a claim asserted against an insurance policy falls outside the scope of coverage and thus refusing to pay or defend that claim. At least one such case does exist, however. In *Grochocinski v. Allstate Ins. Co. (In re Lyckberg)*, 310 B.R. 881, 891 (Bankr. N.D.Ill.2004), the court found that an insurer's postpetition denial of a debtor's claim under a policy "did not constitute a willful violation of stay," even though the insurer did violate the stay in issuing a demand for the debtor to appear at a postpetition examination.

 Although the *Lyckberg* decision does not contain an analysis supporting this holding, we agree with its holding that an insurer's postpetition denial of a claim does not violate the automatic stay. Communication by an insurer of its position that an insurance policy excludes or other

wise does not cover a claim is not "an act to exercise control over property of the estate" under section 362(a)(3) and no other provision of section 362 comes close to applying in this case. Congress clearly knew how to identify acts requiring relief from the stay, but did not include a provision staying a party's refusal to perform actions not required by a contract or even staying breaches of a contract.[2] We must apply section 362 as written (*Gardenhire v. Internal Revenue Service (In re Gardenhire)*, 209 F.3d 1145, 1152 (9th Cir.2000)) and it stretches the plain meaning of section 362 to require a contracting party to obtain relief from the stay before refusing to perform under a contract.

Debtors rely primarily on two federal cases and one state case in support of their position that an insurer's denial of a defense or refusal to pay a claim constitutes an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Neither federal case is on point.

Both federal cases hold that an insurer's postpetition *cancellation of insurance policies* violates section 362(a)(3) because the policies themselves are property of the estate and cancellation is an act to exercise control over property of the estate. *See Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp. (In re Minoco Group of*

**2.** In *Computer Commc'ns, Inc. v.Codex Corp. (In re Computer Commc'ns, Inc.)*, 824 F.2d 725 (9th Cir.1987), the Ninth Circuit held that the non-debtor contracting party may not unilaterally terminate a contract without first obtaining relief from the stay. In *Computer Communications*, the non-debtor party terminated the contract pursuant to a bankruptcy default clause. Subsequent cases have refused to extend the *Computer Communications* holding to breaches of contract:

Nor has the Court found or have the Debtors provided any cases in support of

the proposition that a creditor's mere breach of a contract requires relief from the automatic stay. In addition, the holding of *Computer Communications* is clear: unilateral termination of a contract by a creditor requires relief from the automatic stay. The Court declines to expand the holding of *Computer Communications* to breaches of contract not tantamount to a termination. *In re Bobbitt*, 174 B.R. 548, 554 (Bankr. N.D.Cal.1993). Again, Insurer here was not terminating the policy.

Cos., Ltd.), 799 F.2d 517, 518–19 (9th Cir. 1986) (policies insuring debtor against indemnity claims made by its officers and directors were property of estate and cancellation of policies was stayed by section 362(a)(3)); *Scrima v. John Devries Agency, Inc.*, 103 B.R. 128, 132 (W.D.Mich.1989) ("Under § 541(a) a debtor's insurance policies generally comprise property of the estate.... Thus, § 362(a)(3) stays postpetition cancellation of insurance policies that are property of the estate.").

In contrast, Insurer is purporting to honor the policy and merely is making a contractually-permitted determination regarding its scope. Thus, *Minoco* and *Scrima* are inapplicable. Insurer is not attempting to cancel the policy; rather, Debtors had cancelled the policy before the petition date. Here—unlike the insurers in *Minoco* and *Scrima*—Insurer was simply communicating its position regarding its duties and liabilities under the contract.

Debtors do cite, however, a Hawaii state court case holding that an insurer's commencement of a suit for rescission and for a declaratory judgment that it was not obligated to defend a lawsuit against a debtor constituted a violation of section 362(a)(3) (but not section 362(a)(1), which prohibits the commencement of actions against a debtor).[3] *See Island Ins. Co., Inc. v. Santos*, 86 Hawai'i 363, 949 P.2d 203, 207–08 (Haw.App.1997). Stating that the "question is whether an insurer's duty to defend and/or duty to provide insurance coverage is considered 'property' of a debtor's estate" and relying on *Minoco*, the state court held that an insurance contract is property of the estate and thus the commencement of an action by the insurer to determine its obligation to defend a postpetition lawsuit based on postpetition occurrences violated the automatic stay. *Santos*, 949 P.2d at 207–08.

*Santos* is neither binding nor persuasive. First, the state court did not thoroughly analyze whether the "duty to defend" is property of the estate; instead, it simply relied on policy cancellation cases holding that the policy itself is property of the estate. *Minoco* and other cases clearly provide that cancellation or termination of a contract requires relief from the stay. But that is not the situation here; Insurer is not attempting to cancel or terminate a contract but is simply refusing to perform actions that it believes are not required by the contract.

In addition, the state court in *Santos* overlooked an important concept of bankruptcy law: the property of the estate cannot exceed whatever interests a debtor holds at the commencement of a case. *Foothill Capital Corp. v. Clare's Food Market, Inc. (In re Coupon Clearing Serv., Inc.)*, 113 F.3d 1091, 1099 (9th Cir.1997) ("the estate [has] no greater rights in property than those held by the debtor prior to bankruptcy"); *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 819 (9th Cir.1997) ("filing bankruptcy cannot give a debtor a greater interest in an asset than that which he owned pre-bankruptcy").

Here (and in *Santos*), Debtors held the right under their insurance policy to submit claims and tender defenses, *subject to* Insurers' right to refuse to pay or defend non-covered claims. Nothing in the insurance policy mandated coverage if the claims fell outside the scope of the policy or contract; to the contrary, the policy lists specific exclusions to coverage. Therefore, the estate's "property interest"

---

**3.** The state court found that section 362(a)(1) did not apply because the insurer's action could not have been commenced prior to the petition date, because all of the pertinent events occurred postpetition.

is whatever benefits flow from the contract, subject to the insurer's determination that certain claims (or "benefits") are excluded from coverage. The exercise of the insurer's determination thus cannot violate the automatic stay, as the debtor's property interest is subject to that contractual limitation in the first place.

■ Finally, to hold that the "duty to defend" is property of the estate, as the *Santos* court did, assumes that all asserted claims fall within the parameters of the policy's coverage. In other words, it expands the terms of the contract and provides the debtor and the estate with new contractual rights: a presumption that all claims are covered and must be paid or defended. But the Bankruptcy Code does not and should not grant a debtor "greater rights and powers under the contract than he had outside of bankruptcy." *White Motor Corp. v. Nashville White Trucks, Inc. (In re Nashville White Trucks, Inc.)*, 5 B.R. 112, 117 (Bankr.M.D.Tenn.1980).

We therefore decline Debtors' invitation to extend *Santos* and instead agree with the holding in *Lyckberg*, not only as a matter of law but also as a matter of policy. If deciding and communicating

that one's performance is not due under the terms of a contract violates the automatic stay, or if refusing to perform an act (such as defense of a lawsuit) not required by the contract were a violation of the automatic stay, all insurers would be stymied in their day-to-day processing and adjusting of claims.

For example, under Debtors' theory, a provider of health insurance would not be able to deny the claim of an out-of-service provider without obtaining relief from the stay in the patient's/insured's bankruptcy, even though the insurer believes that the claim is excluded from the policy. Similarly, an insurer presented with a casualty claim by a debtor for water damage could not reject that claim as falling within flood exclusions without first obtaining relief from the stay.

The Bankruptcy Code simply does not require an insurer to obtain relief from the stay to assert its position under a contract. If the insurer wrongfully rejects a claim, or wrongfully refuses to assume the defense of a claim, the insured has multiple options for pursuing relief. Seeking sanctions for violation of the automatic stay is not one of them.[4]

---

4. Debtors note that Insurer did not object when the Knights filed a motion for relief from stay on the grounds that recovery would be limited to proceeds from Debtors' policy and on the grounds that Debtors would not be paying for the defense of the state court action. Regardless of whether these facts might be relevant in an action for wrongful denial of coverage, they are not relevant to whether Insurer violated the automatic stay.

We express no opinion on the effect of the subsequent denial of coverage on the order "modif[ying]" the automatic stay for the "limited purpose" of determining liability and damages and "pursuing recovery of any available insurance proceeds from Debtors' liability insurers, that is, limiting the ability of Movants to enforce the judgment against Debtors to Debtors' insurance coverage." Order Granting Creditors [Knights'] Motion for Relief from Automatic Stay filed on November

29, 2005 (Jan. 11, 2006). Nor do we express a view on whether a judgment obtained pursuant to that order could be enforced against the debtors as a personal liability in the event they do not receive a discharge of the debt or, instead, whether they would be entitled to relitigate liability and damages. Such issues lurk in the background whenever there is a conditional relief from stay as to which the condition fails, but they have not been presented to us by the parties and need not be decided.

We do, however, question how Debtors could have incurred damages because of Insurer's denial of coverage (as opposed to damages arising from Insurer's purported bad faith denial of coverage, which is a matter to be resolved separately) after the stay was modified. Moreover, so long as they complete their confirmed chapter 13 plan, we assume the debt will be discharged.

## VI. CONCLUSION

■ Under section 362 as written, an insurer does not violate the automatic stay when it determines its obligations under a policy and acts accordingly.[5] We therefore agree with the bankruptcy court that Insurer's withdrawal of defense pursuant to its reading of the insurance policy did not violate the automatic stay. Accordingly, we AFFIRM.

---

5. The insurer may be violating other statutes or law (such as state law imposing good faith in deciding coverage issues), but it is not violating the automatic stay unless it files suit or performs another act specifically identified in section 362(a).